# Moldawer, Appellant, *v.* Trust Company of North America.

*Banks and banking—Collection of promissory note—Negligence—Loss of note—Failure to give notice—Practice on appeals.*

1. Where a person who for a long period has been a depositor in a bank, deposits a promissory note for collection in the same city in which the bank does business, and the bank places the note in the hands of an experienced and competent notary public with direction to collect or protest it for nonpayment, and the notary loses the note, and does not protest it, the bank will not be liable for failure to protest the note, but it will be liable to its depositor if it neglects for months to give him notice of the loss of the note, although such notice was feasible.

2. In a suit by the depositor against the bank where there is no averment in the statement, of negligence in failing to notify plaintiff of the loss of the note, but such negligence is shown at the trial without objection, a judgment for the plaintiff will not be reversed after a trial upon the merits, and this is especially so where it appears that the statement in assumpsit specifically alleged an implied agreement on the part of the bank to return the note, and failure to do so.

3. In such a suit the defendant is not entitled to binding directions in its favor, because the plaintiff offered no evidence as to the solvency or insolvency of the maker of the note, or any evidence of pecuniary loss, inasmuch as the plaintiff is entitled to recover at least nominal damages.

4. If, in such a case, the judgment is reversed, the record will be remitted to the court below with direction to enter such judgment as law and right may require.

Argued Dec. 9, 1913. Appeal, No. 138, Oct. T., 1913, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1909, No. 3,931, for defendant non obstante veredicto in case of Michael Moldawer v. Trust Company of North America. Before RICE; P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit to recover for the value of a promissory note. Before WILLSON, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the jury returned a verdict for plaintiff for $350. Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* was in entering judgment for defendant n. o. v.

*W. Horace Hepburn, Jr.,* for appellant.—A bank is liable for loss of commercial paper deposited for collection: Delaware County Bank v. Broomhall, 38 Pa. 135; Exchange National Bank v. Third National Bank of New York, 112 U. S. 276.

After a bank takes a negotiable piece of paper purported to be worth its face, and purported to be collectible, which they enter in the pass book of the depositor as so much cash to be collected, the presumption is that it is worth the face of the paper if properly handled: National Revere Bank v. Nat. Bank of the Republic, 172 N. Y. 102; Citizens' Nat. Bank v. Third Nat. Bank, 19 Ind. App. 69; McClure v. Osborne, 86 Ill. App. 465; American Express Co. v. Parsons, 44 Ill. 312; American Express Co. v. Haire, 21 Indiana, 4; Walker v. State Bank of New York, 9 N. Y. 582; First Nat. Bank v. Bank of Denver, 4 Dill. 290; Hendricks v. Bank, 153 Alabama, 636; Dern v. Kellogg, 54 Nebraska, 560; Omaha Nat. Bank v. Kiper, 60 Nebraska, 33; Farmers' Bank and Trust Co. v. Newland,

97 Ky. 464; Sahlien v. Bank, 90 Tenn. 221; West v. St. Paul Nat. Bank, 54 Minn. 466; Pennington v. Yell, 11 Ark. 212; Stowe v. Bank, 14 N. C. 408; Merchants' & Mfrs. Bank v. Stafford Bank, 44 Conn. 564; Huntington v. Rumnill, 3 Day (Conn.), 390; Hough v. Young, 1 Ohio, 504.

*C. L. McKeehan,* of *Roberts, Montgomery & McKeehan,* with him *E. M. Biddle* and *J. S. Clark,* for appellee.— A bank or trust company receiving negotiable paper from a depositor for collection in the usual course, and with no special agreement modifying custom, is simply an agent for transmission and performs its entire duty when it delivers the paper to a suitable agent for collection: Mechanics' Bank v. Earp, 4 Rawle, 384; Bellemire v. U. S. Bank, 4 Wharton, 105; Wingate v. Mechanics' Nat. Bank, 10 Pa. 104.

There is no presumption that the note in question was of any value. If the plaintiff had any right of action against the defendant his measure of damage is the actual loss he sustained by reason of the defendant's breach of duty, and it was part of his case to allege and prove the amount of his loss: Hamilton v. Cunningham, 2 Brock. 350; First Nat. Bank of Trinidad v. First Nat. Bank of Denver, 4 Dill. 290; West v. St. Paul Nat. Bank, 54 Minn. 466; Pennington v. Yell, 11 Ark. 212; Stowe v. Bank of Cape Fear, 14 N. C. 408; Merchants & Mfrs. Bank v. Stafford Bank, 44 Conn. 564; Huntington v. Rumnill, 3 Day (Conn.), 390.

Plaintiff cannot recover for the defendant's delay in notifying him of the loss of the note, not only because the delay is not shown to have injured him, but because he did not aver this cause of action in his statement of claim: Leh v. D., L. & W. R. R. Co., 30 Pa. Superior Ct. 396; Hale v. Hale, 32 Pa. Superior Ct. 37; Wilkinson Manufacturing Co. v. Welde, 196 Pa. 508; Rodell v. Adams, 231 Pa. 284; McLean v. A. Schoenhut Co., 225 Pa. 100.

OPINION BY RICE, P. J., April 20, 1914:

The banking business which the defendant conducted consisted, in part, of receiving money for deposit, and checks, notes, drafts and bills for collection. The plaintiff had been for fifteen or sixteen years, and was at the time of the transaction in question, a depositor in the defendant's bank, and as such deposited notes and checks from time to time.

In October, 1907, he deposited a note for $350, dated September 20, 1907, made by Cooper Brothers to the order of M. Cooper & Company, payable three months after date, and indorsed by M. Cooper & Company, and by the plaintiff.

At the time he deposited it the bank teller who received it made an entry in the plaintiff's pass book, consisting of the amount, the name of the maker and the date of maturity. The entry is not transcribed literally in the notes of the testimony. But its exact wording is not very important in the present inquiry, for it is not claimed that the note was deposited and accepted as the equivalent of cash, or that a present credit to the plaintiff for the amount was entered in his bank account or was intended, or that the plaintiff's indorsement was for any other purpose than for collection for his use and benefit.

Before maturity, the defendant notified the makers that the note was at its banking house and was payable there. Not having been paid at maturity, the defendant at once placed it in the hands of an experienced and competent notary public with direction to collect, or protest it for nonpayment.

The notary went to the maker's place of business and found it locked and deserted. He then started back to his office in order to notify the indorsers, when he discovered that he had lost the note. He advertised for it but it never was found. It was not protested, and the indorsers never were notified of its nonpayment.

The defendant was promptly notified of the loss of the note but did not promptly notify plaintiff, although that was feasible. He first learned of it in the early part of January in the following year in this way: He took his book to the bank to have his account settled, and when it was returned to him he discovered that it had not been credited with the amount of the note. Thereupon he made inquiry at the bank and was told it had been lost by the notary.

From the foregoing recital of undisputed and virtually admitted facts it is seen, that the transaction was the usual one of a deposit of commercial paper for collection, made by the holder thereof in a bank in which he is a regular and customary depositor, to be followed by a credit to him for the amount, if and when it shall be paid to the bank. Although the evidence does not show any words of express promise on the part of the bank, yet, viewing the transaction in the light of the previous and existing relation and course of dealing between the parties, and of the usages in such matters, which are of common knowledge (or, as is said in Hertzog v. Hertzog, 29 Pa. 465, "the common understanding of men"), an agreement in fact, creating an obligation on the part of the bank, is implied or presumed from their acts. The fact that no compensation for collection was promised or agreed upon does not militate against the foregoing conclusion. To say nothing of the advantage which accrues to the bank from having and retaining the holder of the paper as a general depositor, the valuable consideration which supports such agreement, as a contract, is the use of the money to be collected so long as it shall be allowed to remain in the bank's hands after it has been collected: Merchants' National Bank of Philadelphia v. Goodman, 109 Pa. 422. The defendant being an agent for collection, its duty was to exercise, "competent skill and proper care" in the service it undertook to perform: Wingate v. Mechanics' Bank, 10 Pa. 104; Bank of

Delaware County v. Broomhall, 38 Pa. 135. In the present instance this service did not contemplate or require the transmission of the note to another place for purpose of presentation to the maker and notice to the indorser in the event of dishonor. The note was made and was payable in Philadelphia, and so far as appears all the parties resided there. Therefore the defendant was not, in the strictest and most appropriate sense of the term, an agent for transmission only. But it has been held that, in such a case as we have, performance of the bank's duty, so far as it involves presentation and notice of dishonor, may be committed by the bank to a competent and experienced notary public, in the usual course, and the bank is not liable to the depositor for the notary's neglect to give notice to the indorser: Bellemire v. Bank of the United States, 4 Wharton, 105. It would seem to follow logically that the negligence of the notary, through which the note is lost, is not imputable to the bank. But, granting this, it does not follow logically or reasonably, that the bank is under no further obligation than to place the note in the hands of a competent and skillful notary with direction to collect or protest for nonpayment. For example, if it be returned by the notary unpaid, there still rests on the bank an obligation to exercise care in its custody until it is returned to the depositor on his demand; just as, and for the same reason, an obligation rested on the bank to exercise care in its custody before it delivered it to the notary. This obligation, though not expressed in words, is part of the general obligation which the bank impliedly takes on itself when it assumes the agency for collection. So also, the good faith and ordinary care and diligence, which the bank impliedly promises to observe and exercise when it receives from its customer commercial paper for collection, involve notification to the depositor of the loss of the paper within a reasonable time after its loss is discovered by the bank. This implication im-

poses no unreasonable burden on the bank. It does not involve the observance of the utmost good faith or the exercise of extraordinary care, but only simple good faith and ordinary care.

The rule is invoked that the plaintiff does not recover on the proofs alone; he recovers secundum allegata et probata. It is argued that the rule is applicable here, and prevents recovery, because the only negligence proved against the defendant, was in failing to notify the plaintiff of the loss of the note, and this was not averred in the plaintiff's statement of claim. It is to be observed with regard to this objection, that it was not raised by the defendant when the plaintiff testified to the facts involved in the proposition, nor was the court specifically requested to instruct the jury to disregard the testimony or to find for the defendant upon the ground of variance. Evidently the defendant was not surprised or taken at a disadvantage by the introduction of this testimony. To say the least, if these matters do not constitute a complete waiver of the objection, they do furnish a strong reason for harmonizing the issue raised by the pleadings and that actually tried, if that can be done, by taking a liberal view of the statement of claim. The action was assumpsit and the gravamen was breach of contract. The statement alleged, generally, an implied agreement on the part of the defendant to use due diligence, and alleged specifically an implied agreement on its part to return the note to the bank in the event of its not being paid, and failure to return it. The defendant answered, by its evidence, that it was exonerated by the loss of the note by the notary, in whose hands it had placed it. But, as has been seen, that did not completely exonerate the defendant from the liability arising, prima facie at least, from its failure to return the note. The loss of the note was not a complete excuse. In other words, because of the defendant's failure to notify the plaintiff of the fact, the loss of the note did not convert the

breach in fact into a nonactionable breach.   Taking
the liberal view of the pleadings, which, in the circum-
stances, it is permissible to take, and ought to be taken,
there was not such substantial variance between the
allegata and the probata, as would be fatal after a fair
trial on the merits: Kroegher v. McConway, etc., Co.,
149 Pa. 444; Kirchner v. Smith, 207 Pa. 431; Elder
Township School District v. Pennsylvania R. R. Co.,
26 Pa. Superior Ct. 112; Finkelstein v. Spatt, 50 Pa.
Superior Ct. 293.

It is argued that the defendant was entitled to bind-
ing direction for verdict in its favor, because plaintiff
gave no evidence of pecuniary loss sustained by him.
It is true, he gave no evidence as to the solvency or
insolvency of the makers and indorsers of the note,
and, indeed, no evidence from which the jury could
arrive at a reasonably certain conclusion as to its actual
value.   And we are not convinced that, in the absence
of any evidence on the subject, the jury was bound
to find, or legitimately could find, that the measure of
pecuniary loss sustained by the plaintiff was the amount
of the note with interest.   But, be that as it may (we
do not decide the point), the absence of evidence on
that subject was not alone ground for holding that the
plaintiff could recover nothing.   There being a breach
of contract, which was calculated to produce loss, there
flowed from it a legal injury cognizable in an action of
assumpsit; and though the plaintiff's evidence fell short
of proving the actual loss sustained, he was neverthe-
less entitled to recover nominal damages: Ashby v.
White, 1 Salk. 19; Holler v. Weiner, 15 Pa. 242; Adams
Express Company v. Egbert, 36 Pa. 360; 1 Sedg. on
Damages (9th ed.), secs. 105, 106 et seq.   This right
stood in the way of the affirmance of the defendant's
point that the verdict must be in its favor, and, conse-
quently, in the way of judgment in its favor non ob-
stante veredicto.   Whether the court erred in not in-
structing the jury that the plaintiff could recover no

more than nominal damages, does not arise on this appeal and need not be discussed. But, in order not to conclude the defendant upon this question, which is raised by one of its exceptions, the practice suggested in Hughes v. Miller, 192 Pa. 365, and approved in later cases, will be followed.

The judgment is reversed and the record is remitted to the court below with direction to enter such judgment as law and right require.