## Crocker-Wheeler Co., Appellant, v. Chester Steel Castings Co.

*Bailments—Injury to property—Rights of bailor due to liability of bailee.*

A bailee without hire must exercise only ordinary care in safeguarding of the property committed to his charge.  If the article be lost by theft, fire or otherwise, notwithstanding the exercise of ordinary care, the loss falls on the owner of the goods and not upon the bailee.

The burden is upon the plaintiff to prove want of such ordinary care and in the absence of such proof a nonsuit is properly entered.

Where the evidence established the fact that certain patterns had been committed to the charge of a foundry company, for the purpose of manufacturing certain articles in accordance with the requirements of the plaintiff, and that these patterns were afterwards destroyed by fire, while in the possession of another company, who was acting as agent for the original bailee, and there was no evidence that either party failed to exercise the ordinary care required in such circumstances, there can be no recovery.

Argued March 11, 1919. Appeal, No. 202, Oct. T., 1918, by plaintiff, from judgment of C. P. No. 3, Philadelphia Co., March T., 1915, No. 1448, in favor of defendant, non obstante veredicto, in the case of Crocker-Wheeler Company v. Chester Steel Castings Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ. Affirmed.

Assumpsit to recover damages for loss of personal property. Before FERGUSON, J.

The facts appear in the opinion of the Superior Court.

Verdict for plaintiff for $1,279. Subsequently the court, on motion, entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*Edwin O. Lewis,* for appellant.—Whether the bailee exercised due care was a question for the jury: Ackley v. Bradford Township, 32 Pa. Superior Ct. 493; Brannan v. Halderman, 35 Pa. Superior Ct. 286; Carlisle, etc., Bank v. Graham, 79 Pa. 106; Lancaster Co. Nat. Bank v. Smith, 62 Pa. 47; Tomkins v. Saltmarsh, 14 Serg. & R. 275; Swartz v. Hauser, 10 W. N. C. 434.

*Harold B. Beitler,* of *Dickson, Beitler & McCouch,* for appellee, cited: Zell v. Dunkle, 156 Pa. 353.

OPINION BY HEAD, J., December 1, 1919:

The action was assumpsit. The plaintiff planted its right to recover on an alleged breach by the defendant of

an obligation contracted by it which breach resulted in the destruction of certain property of the plaintiff. The relations between the parties were contractual. The primary purpose and object of the contract they made were the sale and delivery by the defendant of a number of metal castings and the acceptance of and payment for them by the plaintiff. The contract was in writing, evidenced by an offer from the defendant and an acceptance of that offer by the plaintiff. The contention between the parties does not arise because of any alleged default by either in the performance of the primary obligations of this contract. In the defendant's written offer it was stated the castings which were the subject of the primary undertaking were to be made "from full patterns to be furnished by you." The offer was accepted as made thus completing the contract. In pursuance of the contract a number of wooden patterns were, from time to time, delivered by the plaintiff to the defendant and used by the latter in making the metal castings which were the subject of the contract. It will be observed, the parties themselves in no way undertook to define or declare any obligation on the part of the defendant to do anything with these patterns except to use them in making the moulds necessary for the production of the required castings. What was to become of them after they had been used; when they were to be returned, if at all; how they were to be kept and cared for after they had been used in the manner contemplated, were matters about which the contract is wholly silent. Any duty resting on the defendant, therefore, in these respects must have been written into the contract by the law, otherwise, no such duty existed.

In Cody v. Venzie, 263 Pa. 541, Mr. Justice SIMPSON, speaking for the Supreme Court, delivered an opinion that is highly instructive and calculated to stimulate accuracy of thought and expression in dealing with the principles of law upon which actions for negligence must rest. "In Cohen v. Tradesmens' National Bank, 262 Pa.

76, we decided an action of negligence could not be maintained unless defendant owed some duty to plaintiff either individually or as one of the general public." Looking then, first, at the contract which the parties made for themselves, let us search for the duty owed by the defendant to the plaintiff in relation to the patterns furnished by the plaintiff under the express terms of the contract. Manifestly, the strongest position that can be taken by the plaintiff under the circumstances is, that there was a bailment without hire of personal property that was reciprocally beneficial to the parties. Clearly then, if the plaintiff may recover for any injury to his property delivered to the defendant under a bailment of this character, such recovery must follow proof by the plaintiff that defendant neglected or refused to exercise ordinary care in respect to the patterns which were the subject of the bailment.

The facts showing how the loss complained of resulted are undisputed and may thus be briefly stated. There came a time, while the contract was in force, when the defendant was unable itself to manufacture the castings it had undertaken to deliver to the plaintiff. This inability resulted from a shut-down of a portion of the plant of the defendant. Recognizing, however, the stress of its obligation to comply with its contract to deliver the castings, it arranged with the Federal Foundry Company in the same city to produce and deliver these castings during the period of the suspension of the defendant's plant. To carry out this arrangement, the necessary patterns belonging to the plaintiff were turned over to the foundry company and with their use that company proceeded, for a time, to supply the castings required by the plaintiff. As the castings were supplied the patterns, for the time being at least, were of no further use in the operations of that company and they were accordingly stored, along with patterns of its own, in a storehouse provided for that purpose. While thus stored they were destroyed by an accidental fire in which the storage

plant was consumed.   The record is barren of any evidence whatever tending to prove that the storage building was inadequate in any way for the purpose for which it was used or that the patterns of the plaintiff were subjected to any greater risk of fire whilst there than they would have been had they remained in the possession of the defendant.   It is clear, the undertaking of the defendant to deliver the castings, which were the primary subject of the contract, did not necessarily involve their manufacture solely by the defendant company. They were ordinary articles of commerce and the defendant in no way, shown by this record, departed from its obligation under the contract when it sought the aid of the foundry company to help it in making castings so that they could be delivered to the plaintiff as required.   There is nothing in the evidence that would furnish a foundation for a finding by a jury that this fact alone was a breach of the duty imposed on the defendant by law under the terms of its written obligation. The defendant was not an insurer of the property of the plaintiff which was the subject of the bailment.   If there were nothing more in the case than the facts we have already adverted to we think it would be ruled by Zell v. Dunkle, 156 Pa. 353.   There the plaintiff had delivered to the defendant a boiler to be repaired.   While in the defendant's possession for that purpose it was destroyed by fire and the plaintiff sued to recover the damages resulting from such loss.   In affirming the action of the court below in refusing to take off a compulsory nonsuit, Mr. Justice WILLIAMS said: "The care which the defendants were, under an implied undertaking, to exercise for the safety of their customer's goods, was ordinary care only.   If the article be lost by theft, fire, or otherwise, notwithstanding the exercise of ordinary care, the loss falls on the owner of the goods and not on the workman.   If the loss be due to the want of ordinary care, then it falls on the workman.   The burden of showing negligence is on him who alleges it.   It was the

duty of the plaintiff to show, affirmatively, conduct on the part of the defendants that amounted to a breach of the implied undertaking to use ordinary care for the safety of the boiler left with them for repairs, and failing in this the court was right in taking the case from the jury." The record in the present case, as we have already stated, discloses no evidence at all that defendants had failed to care for the property of the plaintiff in the manner that was usually exercised by reasonable men in the care of their own property or that which had been delivered to them on bailment under circumstances like those here presented. Our first inquiry, therefore, results in the conclusion that the mere happening of the fire under the circumstances stated, in no way changed the legal obligation of the defendant and the evidence thus far disclosed no support for the alleged breach of such obligation.

We come then to a consideration of the second question that arises under the facts in evidence and we again turn our attention to an effort to discover what additional obligation, if any, was imposed upon the defendant by the circumstances we shall now briefly state. The original contract from which we have quoted was completed by the plaintiff's letter of acceptance dated January 12, 1914. It appears, and it is so averred in the statement of claim, that this contract, covering the furnishing of castings for the year 1914, was but a continuation of the same business relations under similar contracts which had existed between the parties during the years 1912 and 1913. On September 17, 1913, the plaintiff wrote the following letter to the defendant: "You have stored at your foundry quite a number of our patterns and we would thank you to advise whether these are in one building or whether they are scattered throughout the plant. It is our desire to insure same against fire and it is necessary for us to know exactly where the patterns are stored. We trust you can give us this information by return mail," etc. To this letter

the defendant replied: "Replying to your letter of the 17th inst. relative to patterns stored at our foundry, beg to advise that your patterns which are not in use are stored in several different buildings; the smaller patterns are all in one building and the larger patterns it is necessary to store in another building and of course a good many of your patterns are in constant use and these you understand are in our foundry. We believe that the insurance should cover your patterns throughout the plant. Hoping that this will give you the information desired, we are," etc. This constituted the entire correspondence between the parties on the subject of insurance. These letters were the only direct communication between the parties that was ever had concerning the plaintiff's stated desire to insure the patterns.

Now, the plaintiff avers that it afterwards actually purchased policies of insurance on these patterns and that there is to be found in the letters we have quoted sufficient to visit the defendant company with knowledge that the plaintiff's desire to insure had ripened into an actual insurance of the patterns. Furthermore, that the defendant was bound to take notice that the condition of such insurance as it afterwards bought was such that its validity necessarily depended on the continued keeping by the defendant of all of the patterns in its own possession. Let it be remembered that plaintiff never gave any notice written or verbal to the defendant that its expressed desire to insure had become an accomplished fact or that the validity of the policies which it purchased would be destroyed were any of the patterns permitted to remain elsewhere than in the plant of the defendant. Nobody contends that there was any such actual notice. The whole liability of the defendant must rest, if it exist at all, upon an inference it was obliged to draw from the letters, that the plaintiff had actually succeeded in procuring the desired insurance; and because of that knowledge it assumed an obligation which, as we have seen, had not theretofore been imposed

on it by the law.    The foundation is too narrow to support the structure that is sought to be reared upon it. Our common experience teaches us that a large portion of the misfortunes we encounter in this world result from the fact that too often the good intentions and desires of men are never converted into accomplished facts. The obstacles that intervene are occasionally ·insurmountable, sometimes difficult, too frequently trivial. The plaintiff may have found insurance companies unwilling to assume the risk under existing conditions. The premiums demanded may have been too high.    Many things in the rush of business might have delayed or prevented the accomplishment · of the expressed intention to have the patterns insured.    We are of opinion that if the plaintiff desired to impose any additional obligation upon the defendant arising from the fact that the patterns .had been insured, it was its plain duty to have brought that all important fact to·the notice of the defendant.

There is one other aspect of the case to which we shall briefly advert.    The admitted and established facts disclosed by this record leave no room for doubt in our judgment the plaintiff itself had actual notice before the fire that castings were being made for it by the Federal Foundry Company and that some of its patterns were necessarily in the possession of that company.    The original contract creating the bailment was executed for the plaintiff by its assistant to the purchasing agent. The letter which we have quoted on the subject of the proposed insurance of the patterns was signed for the plaintiff by its purchasing agent.    Several letters passed between the purchasing agent or his assistant of the plaintiff company and the defendant with relation to particular castings being made by the Federal Foundry Company.    For instance, on March 31st, a letter was addressed to the defendant company on a letter head of the plaintiff, containing this memorandum: "In reply please refer to Purchasing Dept."    This letter states, inter alia,

"we have your letter of the 30th instant in response to ours of the 28th instant with reference to charge for defective casting #134259 on our So. 68757 and note that you say that the Federal Steel Foundry Company have declined to make any allowance for defective castings unless returned......we trust you will take up the question again and will feel that you will be able to make some concession." On twenty-seventh of March the defendant had written to the plaintiff with reference to this same casting. The letter contained this language: "This casting as you are aware was made at the plant of the Federal Steel Foundry Company to help us out pending our shutdown and they ask that the casting be returned and that they will replace it." This was followed by another letter from defendant to plaintiff under date of March 30th relating to the same casting, being the letter to which the reply of the plaintiff first quoted was made. This letter states: "You are familiar with the fact that we had this casting made at the Federal Steel Foundry Company and they refused us any allowance unless the casting is returned," etc. On April 15, 1914, the plaintiff, through its purchasing department, wrote to the defendant in reference to an entirely different pattern. It contained this statement: "We consider your letter of the 10th instant an unsatisfactory reply to ours of the 9th therefore we were obliged on the 13th instant to send our Mr. Luttgens to investigate and he has reported that the only reason this pattern might have to be lagged is by reason of the Federal Steel Company's shrinkage being different from yours. We understand that you are having the Federal Steel Company make our castings ordered from you temporarily and we cannot therefore accept any responsibility whatever in the matter." In the face of this correspondence, the visits of representatives of the purchasing department to the plant of the Federal Foundry Company, their observation that the patterns of the plaintiff were in actual use in that foundry, etc., there is no room for any conclusion

other than that plaintiff had actual knowledge of the fact that castings were being made for it by the Federal Foundry Company and that its patterns to that extent were in the possession of the last-named company. If this fact were likely to invalidate the insurance which had actually been bought by the plaintiff, without the knowledge of the defendant, we think the duty was clearly imposed upon the plaintiff to give notice to the defendant of the fact that insurance had been secured and the patterns thereafter must be kept in its own plant.

We are strongly urged to say, even under all the facts of the case, that because the law imposed upon the defendant the duty of ordinary care of the bailed property, there necessarily arose a question of fact to be submitted to the jury. Many cases are cited in which the general rule of the law has been so stated, but in every such case there is a precedent and fundamental question of law to be determined by the court. Is there any evidence tending to establish any fact which, if established, would warrant a finding in favor of the party upon whom the law casts the burden of proof? If there be no such evidence, there can be nothing to submit to the jury.

Now, in the present case, the original contract which created the bailment and the relative duties of the parties was in writing. What actually occurred between the parties in reference to the expressed desire of the plaintiff to insure the patterns was the subject of correspondence in writing. The facts which, as we have declared, were sufficient to visit the plaintiff with notice that some of its patterns were in the possession of the Federal Foundry Company were evidenced by written correspondence. Our examination of the entire record, therefore, as presented to us, impels us to the conclusion that the plaintiff failed to discharge the burden of proof cast upon it by the law and at the conclusion of the case it became the duty of the learned trial judge to so declare. As a consequence, his later action in entering

judgment for the defendant n. o. v. was correct and proper.

The assignments of error are overruled and the judgment is affirmed.