## Crowley, to use, v. Service Garage.

*Bailments—Damage to automobile left with defendant for repairs—Burden of proof.*

1. Where plaintiff delivered his automobile to defendant for repairs and the next morning the car was found with one of the connecting rods through the side of the motor block and crank case, and, in an action for cost of repairs, plaintiff testified that racing a cold high-speed motor, which the motor in the machine in question was, would cause the connecting rod to fly off, but admitted that the same thing would happen if the bolt or nut fastening the connecting rod came off, or if the oil in the motor were low so as not to reach the bearings, and there was no testimony indicating whether the bolts were tight or the oil supply adequate when the car was left with defendant, plaintiff cannot recover, as under his testimony the damage might have occurred in any one of three ways, for only one of which could the defendant be held responsible, to wit, the racing of the engine improperly.

2. Where plaintiff, on delivering the automobile to the garage, told defendant that he himself was a mechanic and did not want the car touched, and defendant replied that no one "would bother it," the mere driving or moving of the car from one part of the garage to another to make way for a truck did not, in itself, amount to negligence, even if a violation of the understanding under which the car had been left with defendant.

3. Where plaintiff's own case is not self-sustaining and its defects are not cured by defendant's testimony, a verdict for plaintiff cannot be sustained, and judgment *n. o. v.* for defendant is properly entered.

Opinion sustaining entry of judgment *n. o. v.* C. P. No. 2, Phila. Co., June T., 1925, No. 5979.

*David S. Malis,* for plaintiff; *Gibbons & Whitaker,* for defendant.

LEWIS, J., Jan. 25, 1927.—We have had the benefit of a reargument in reviewing our action in entering judgment for the defendant *non obstante veredicto.* The importance of the question involved has led us to supplement the briefs with an additional study of the authorities from other jurisdictions. As a result, we are convinced of the correctness of our prior action.

The plaintiff delivered an automobile to the garage maintained by defendant and the next morning found the car badly damaged, due to the fact that one of the connecting rods had come through the side of the motor block and crank case. This action was brought to recover for repairs made necessary by the damage done, and a proper disposition of the case depends on where the burden of proof rested.

The contention of the plaintiff is that he made out a *prima facie* case (by which he apparently means a case to be submitted to the jury) by proving "the delivery of the automobile in a good condition, the receipt of it in a damaged condition and the defendant's failure to give an explanation of how the damage happened." It is argued that the burden was then cast on the

Crowley, to use, *v.* Service Garage.

defendant to show that he used reasonable care, and whether this burden was met was for the jury.

On whom did the *onus probandi* rest? Does the plaintiff's argument ignore the important distinction (see 3 Ruling Case Law, 74) between "burden of proof" and "the duty to go forward with the evidence?"

The cases relied on by the plaintiff as establishing his first proposition are Logan *v.* Mathews, 6 Pa. 417, and Vannatta *v.* Tolliver, 82 Pa. Superior Ct· 546. The first cited case involved the hiring of a carriage and its return in a broken condition. The trial judge charged that "when the bailee returns the property in a damaged condition, and fails, either at the time or subsequently, to give any account of the matter, in order to explain how it occurred, the law will authorize a presumption of negligence on his part. But when he gives an account, although it may be a general one, of the cause, and shows the occasion of the injury, it then devolves on the plaintiff to prove negligence, unskillfulness or misconduct." The Supreme Court sustained the charge, saying:

"The books are extremely meagre of authority on this subject of the *onus probandi* in cases of bailment. But reason and analogy would seem to establish the correctness of the position of the court below. All persons who stand in fiduciary relation to others are bound to the observance of good faith and candour. The bailor commits his property to the bailee, for reward, in the case of hiring, it is true; but upon the implied undertaking that he will observe due care in its use. The property is in the possession and under the oversight of the bailee whilst the bailor is at a distance. Under these circumstances, good faith requires that if the property is returned in a damaged condition, some account should be given of the time, place and manner of the occurrence of the injury, so that the bailor may be enabled to test the accuracy of the bailee's report, by suitable inquiries in the neighborhood and locality of the injury. If the bailee returns the buggy (which was the property hired in this case), and merely says, 'Here is your property, broken to pieces,' what would be the legal and just presumption? . . . The bearing of the law is always against him who remains silent when justice and honesty require him to speak. It has been ruled that negligence is not to be inferred unless the state of facts cannot otherwise be explained: 9 English Jurist, 907. But how can they be explained if he in whose knowledge they rest will not disclose them? And does not the refusal to disclose them justify the inference of negligence?"

The case of Vannatta *v.* Tolliver, 82 Pa. Superior Ct. 546, is not in point. It held merely that a garage keeper was liable to the owner of an automobile which was taken, without the owner's knowledge or consent, from the garage by the garage keeper's employee, a night man in charge of the garage, and damaged by him.

A garage owner who stores automobiles for a consideration is a bailee for hire, and as such his duty is to exercise reasonable care and diligence to protect them from being lost or damaged; he is not, however, an insurer: Berry, Automobiles (5th ed., 1926), § 1474; Gingerbread Man Co. *v.* Schumacher, 35 Pa. Superior Ct. 652. Judge Story, in his work on Bailments (9th ed.), § 454, said: "In respect to depositaries for hire, there seem to be some discrepancies in the authorities, whether the *onus probandi* of negligence lies on the plaintiff, or of exculpation on the defendant, in a suit brought for the loss. In England, the former rule is maintained. In America, an inclination of opinion has sometimes been expressed the other way; yet, perhaps, the weight of authority coincides with the English rule."

In 6 Corpus Juris, 1158, we find the following:

"The rule is undoubted that in all actions founded upon negligence, or a culpable breach of duty, the burden is on plaintiff to establish negligence by proof. This principle is recognized by all the authorities as applicable between bailor and bailee, and the only conflict is on the question whether the loss of, or damage to, the goods while in the bailee's possession raises such a presumption of negligence on his part as to establish a *prima facie* case against him. . . .

"In some of the older decisions it was held that the loss or injury raised no presumption of negligence. . . .

"The rule adopted in the more modern decisions is that the proof of loss or injury establishes a sufficient *prima facie* case against the bailee to put him upon his defence. Where chattels are delivered to bailee in good condition and are returned in a damaged state, or are lost or not returned at all, the law presumes negligence to be the cause, and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part. . . . In order to throw the burden of evidence upon the bailee it is sufficient that the bailor has shown damage to the bailed article that ordinarily does not happen where the requisite degree of care is exercised."

The last sentence is important, in view of the nature of the damage to this plaintiff's automobile, as we shall point out later.

And Berry, Automobiles (5th ed., 1926), § 1482, states:

"Where one receives an automobile as bailee, being benefited by the transaction, his inability to return or account for the same constitutes an implied breach of the contract of bailment, for which he is answerable in damages, unless he can show that the loss was not due to any lack of due care on his part. The same rule is applicable where the machine is damaged while in his possession. A showing on the part of the bailor that the machine was damaged while in the bailee's possession places the burden of proving that he exercised due care upon the bailee. . . .

"However, if the machine is injured or stolen or destroyed while in his possession, a presumption arises that he was negligent in caring for it. And in an action to recover for such loss or injury the bailor makes out a *prima facie* case by proving the bailment, and that the automobile was damaged or lost while in possession of the bailee. It is then the duty of the bailee to 'go forward' with proof to show that he used proper care in the bailment; in the absence of which proof, the bailor is entitled to judgment. . . .

"The reason for this rule is stated to be that, since the bailor is generally at a disadvantage in obtaining accurate information of the cause of the loss or damage, the law considers he makes out a case for the application of the rule of *res ipsa loquitur* by proof of the bailment and the failure of the bailee to deliver the property on proper demand. The rule rests upon the consideration that, where the bailee has exclusive possession, the facts attending loss or injury must be peculiarly within his own knowledge. . . . The rule is founded in necessity and upon the presumption that a party who, from his situation, has peculiar, if not exclusive, knowledge of facts, if they exist, is best able to prove them."

We advert to the above general principles to show the deductions which have been drawn from studies of the earlier cases and from the later ones involving the subject of bailments. An excellent discussion is also to be found in 3 Ruling Case Law, 74, *et seq.* As is often true, however, it would be a mistake to decide this case on the basis of general principles alone. It seems obvious, for example, that the nature of the damages to a car should enter

into the consideration of the legal liability of the garage owner. Thus, if the automobile is stolen (See 26 Am. Law Reps. 223), or is destroyed by fire, or is smashed in by some external force, it is only fair to the bailor that the bailee should, after the facts of the bailment and damage are shown, assume the burden of going forward—in other words, to explain how and why the damage was caused, and to establish affirmatively that he performed the duties imposed by law upon him and that the loss occurred despite his exercise of care. Numerous cases are discussed in 15 Am. Law Reps. 681, 697. Should, however, the same burden be cast upon a garage-keeper where, for instance, something "internal" goes wrong with the engine of an automobile while in his possession?

Let us look at the facts of the case before us. The plaintiff testified that when he left the car at the garage, it was in "first class condition, good running shape," and that the next morning he was informed that one of the connecting rods was through the side of the motor block. The plaintiff was himself an automobile mechanic, and testified that "racing a cold, high-speed motor" (which his was), *would* cause the connecting rod to fly off. He admitted, what is perfectly obvious, namely, that the same thing could happen if a bolt or nut fastening the connecting rod came off or if the oil in the motor was low so as not to reach the bearings. Although he stated that the oil was not low, he did not say that the bolts were tight when he left the car with the defendants. Finally, the plaintiff was asked, "There are a number of different ways this same thing could have occurred. It all had to come through the intervention of something inside the motor?" His reply was, "Positively."

Of the numerous cases on the subject that we have examined, two are particularly in point; Scellars *v.* Universal Service Everywhere, 228 Pac. Repr. 879 (Cal., 1924), and Hanna *v.* Shaw, 244 Mass. 57, 138 N. E. Repr. 247 (1923). In the former, it appeared that the plaintiff left his car with defendant and ordered it washed. When he returned in about two hours, he found the crank case was broken in three places and the connecting rod had broken and gone down inside, tearing out the rocker plate around the cam shaft. While driving it in low gear onto an elevated rack, the defendant's employee "heard a click, then a dull thud or 'bang,' when he immediately shut it off." The testimony produced was very similar to that in the case at bar. The court said:

"Experts called as witnesses for (plaintiff) testified that, when the car was taken down, broken parts were found in the bottom of the crank case; that high motor speed could cause the damage which occurred in this instance, one witness saying, 'different things that I know could cause it. . . .

"The cause of the injury in this case is undetermined. It may have been one over which the defendant had control, and it might have been one with which he had nothing to do. . . .

"In the instant case, aside from the occurrence of the accident, there is no further showing of negligence on the part of the defendant except the testimony above referred to that high motor speed could cause the damage which resulted. To hold the defendant liable under these circumstances would be to merely conjecture that he had conducted himself negligently, and thus caused the injury. Where it is a matter of surmise only that the damage was due to a cause for which the defendant is liable, the doctrine (of *res ipsa loquitur*) is inapplicable. . . . Besides, by the respondent's own showing, the injury might have occurred as the result of other causes than racing or running the engine at an excessive speed, as defective parts or metallic crystallization,

and such other causes must have been those over which the defendant had no control."

In Hanna v. Shaw, 244 Mass. 57, 138 N. E. Repr. 247 (1923), an action of tort was brought to recover for damages to an automobile stored in defendant's garage. The damages were practically identical with those involved here, that is, "the connecting rod had gone through the cylinder and seriously damaged the motor." A verdict in favor of the plaintiff was set aside by the Supreme Judicial Court, the opinion reading in part as follows:

"In the case at bar there is no evidence to show that the automobile on the night following the time it was left at the garage was taken therefrom, or that the garage was not properly secured to prevent the entrance of trespassers. While there was testimony that the trouble with the automobile was brought about by overheating the engine, it does not appear that that condition may not have existed when the car was left at the garage, and that the connecting rod may not have gone through the cylinder and damaged the motor when the defendant's employee, Manter, started the engine. The burden of proof of negligence rested on the plaintiff to make out his case: he failed to sustain that burden. . . .

"We are of opinion that the plaintiff in the circumstances here disclosed did not make out a *prima facie* case merely by showing that he left the machine in the defendant's garage in good condition, and that it was in a damaged state the next morning. The burden of proof does not shift to the defendant, but remains with the plaintiff. . . .

"The inference that the engine had been overheated before the car was left at the garage by the plaintiff is equally consistent with the inference that it had been run and the engine overheated after the car was left there. Where the evidence tends equally to sustain two inconsistent propositions, neither of them can be said to be established by legal proof. As the plaintiff failed to show that the damaged condition of the car was the natural and probable result of negligence of the defendants, the verdict cannot be sustained. . . .

"We are unable to agree with the contention of the plaintiff that, when goods have been delivered to a bailee and have been either lost or damaged and the bailee's liability depends upon his negligence, the fact of negligence may be presumed, thereby placing upon him the duty of producing evidence of some other cause of loss or injury. So to hold would be contrary to the law as established by this court and by courts in other jurisdictions. This result is in accord with our own decisions and those of many other jurisdictions, although there are contrary authorities."

These cases commend themselves to us, so we have quoted from them at length. The reasoning, however, is altogether in line with our own cases. We refer particularly to what was said by Judge Trexler in Duffy's Garage v. Sweeley, 66 Pa. Superior Ct. 583: "The principal question is, 'where property is damaged in the possession of the bailee, upon whom rests the burden of proof?' Ordinarily, he who alleges negligence must prove it. This is so when the subject of the injury is a bailment. Thus, in Leidy v. Quaker City Cold Storage Co., 180 Pa. 323, we find that goods stored, being damaged, negligence of the cold storage warehouseman could not be assumed from the mere fact of the goods being injured, but had to be affirmatively proved."

The plaintiff in Zell v. Dunkle, 156 Pa. 353, sent a boiler to defendant's shop for repairs; it was destroyed by fire while stored there. We find the following in the court's opinion: "But was the plaintiff entitled to go to the jury upon the case made by him. The care which the defendants were, under an implied undertaking, to exercise for the safety of their customer's goods was

ordinary care only. . . . If the loss be due to the want of ordinary care, then it falls on the workman: 1 Bouv. Inst., § 1007. The burden of showing negligence is on him who alleges it. It was the duty of the plaintiff to show, affirmatively, conduct on the part of the defendants that amounted to a breach of the implied undertaking to use ordinary care for the safety of the boiler left with them for repairs, and, failing in this, the court was right in taking the case from the jury."

A case closely akin to that just cited is Crocker-Wheeler Co. *v.* Chester Steel Castings Co., 73 Pa. Superior Ct. 119, in which the writer unsuccessfully sought to attack the action of the lower court in entering judgment for a defendant bailee *non obstanto veredicto.* There, Judge Head said: "Clearly then, if the plaintiff may recover for any injury to his property delivered to the defendant under a bailment of this character, such recovery must follow proof by the plaintiff that defendant neglected or refused to exercise ordinary care in respect to the patterns which were the subject of the bailment. . . . The defendant was not an insurer of the property of the plaintiff which was the subject of the bailment. . . . The record in the present case, as we have already stated, discloses no evidence at all that defendants had failed to care for the property of the plaintiff in the manner that was usually exercised by reasonable men in the care of their own property or that which had been delivered to them on bailment under circumstances like those here presented. Our first inquiry, therefore, results in the conclusion that the mere happening of the fire under the circumstances stated, in no way changed the legal obligation of the defendant and the evidence thus far disclosed no support for the alleged breach of such obligation."

And what is particularly appropriate here appears on page 128: "We are strongly urged to say, even under all the facts of the case, that because the law imposed upon the defendant the duty of ordinary care of the bailed property, there necessarily arose a question of fact to be submitted to the jury. Many cases are cited in which the general rule of the law has been so stated, but in every such case there is a precedent and fundamental question of law to be determined by the court. Is there any evidence tending to establish any fact which, if established, would warrant a finding in favor of the party upon whom the law casts the burden of proof? If there be no such evidence, there can be nothing to submit to the jury. . . . Our examination of the entire record, therefore, as presented to us, impels us to the conclusion that the plaintiff failed to discharge the burden of proof cast upon it by the law, and at the conclusion of the case it became the duty of the learned trial judge to so declare. As a consequence, his later action in entering judgment for the defendant *n. o. v.* was correct and proper."

What we now decide is: It was not shown that the damage to plaintiff's car was the result of any lack of due diligence on defendant's part; it affirmatively appeared that the damage might have occurred as a result of any one of several possibilities, including some over which defendant had no control, and the fact that it *might* have been caused by one circumstance over which the defendant did have control and for which he would have been responsible is not sufficient to impose liability on him. The defendant "carried the evidence forward" by "explaining" what occurred, and in so doing he discharged the only duty that was his at the trial. His employee testified that he started the engine for the purpose of moving the automobile out of the way of a truck, and that he had proceeded about three feet when there was a noise in the motor, whereupon he shut off the power and found the connecting rod had come through. The burden was on the plaintiff to prove defendant's failure to

exercise due care, and he did not meet it with his proofs. The plaintiff in his brief admits the "missing link" in his proofs by stating: "There is no proof whether he (defendant's employee) raced the engine or not, but where we have all the links of the chain but one, that one may be inferred." In Eshleman v. Union Stock Yards Co., 222 Pa. 20, the court was asked "to infer" that the injury to plaintiff's property occurred in a certain way, as a result of a breach of defendant's duty as bailee, without definite proof. This was refused and a compulsory non-suit entered.

One more phase of the case needs consideration. The plaintiff testified that when he first went to defendant's garage, he had a conversation as follows: "I told him I was a mechanic and did not want the car touched." The defendant said that "no one would bother it." From this, it is argued that there was a special contract for the hiring of a particular "stall" in the garage, and that, therefore, "the driving of the plaintiff's automobile against his explicit direction is sufficient negligence to sustain a finding in favor of the plaintiff." Our attention is invited to Underberg v. Stewart, 86 Pa. Superior Ct. 106, and Vannatta v. Tolliver, 82 Pa. Superior Ct. 546. Those were cases in which employees of the defendant garage keepers took the plaintiff's car from the garage. See 15 Am. Law Repr. 681, 684. That is manifestly a different situation from the instant one. We are likewise unimpressed with Safe Deposit Co. of Pittsburgh v. Pollock, 85 Pa. 391, to which we have been specially referred. There was in that case a special agreement on the part of the bailee, and the circumstances under which the subject of the bailment was stolen indicated strongly a failure on defendant's part to comply with its express contract, as well as a want of due care and diligence. It is true, that a bailee, by virtue of a special agreement, may become responsible for loss not due to any fault of his, Thomas v. Cummiskey, 108 Pa. 354; Hare v. Mulligan, 77 Pa. Superior Ct. 577, but we cannot bring ourselves to hold that, under a special agreement regarding the handling of the car, particularly an agreement as vague as that alleged to have been made here, the mere driving or moving of the car from one part of the garage to another would amount to proof of negligence. No authority for such a proposition has been called to our attention, and it does not appeal to us as sound on principle.

In view of our decision that the burden of establishing negligence remained on the plaintiff throughout and that the only duty on the defendant, if there was any at all under the facts of this particular case, was to explain what he had done to the automobile, the language used in Simons v. Phila. & Reading Ry. Co., 254 Pa. 507, is inapplicable. That was an ordinary negligence case, wherein the Supreme Court said that "where the testimony offered by the plaintiff makes out a *prima facie* case by showing the existence of facts from which an inference of negligence arises, the case is necessarily for the jury, notwithstanding that the great preponderance of the testimony is with the defendant." The application sought to be made here is that it was for the jury to decide whether "the explanation" given by defendant was worthy of belief. The difficulty with this is that the plaintiff assumes his case could stand of its own strength, whereas, it could not unless, possibly, the defendant had failed to give any explanation. In Hare v. Mulligan, 77 Pa. Superior Ct. 577, the plaintiff's car was stolen from defendant's garage; as has been pointed out, a disappearance of the car presents a quite different problem; but there the court said: "When he rented space in his garage to the plaintiff for his car and took from him a money consideration, he certainly owed some duty to the latter. Let it be assumed that, as a bailee for hire, his obligation to the owner of the bailed property was but the exercise of reasonable and

Crowley, to use, v. Service Garage.

ordinary care. Nevertheless, under the circumstances in this case, and the defendant's inability to offer any explanation at all for the disappearance of the car, it would be difficult to see how the court could do otherwise than send the case to the jury to determine whether or not such reasonable and ordinary care had been exercised." See, also, Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297.

Presenting to the jury a case in which the plaintiff's proof is merely that the damage to his car *could* have occurred by defendant's racing the engine, although he admits it could have happened from natural causes, is to ask the jury to guess. From the standpoint of plaintiffs, this is usually highly desirable, but the law has said it is not to be permitted.

For the reasons given above, we are of opinion the motion for judgment *n. o. v.* was properly allowed.