## STEVENSON v. RUTH.
### No. 5583.

Circuit Court of Appeals, Third Circuit.
March 5, 1935.

H. E. McCamey, Charles A. Woods, Jr., and Dickie, Robinson & McCamey, all of Pittsburgh, Pa., for appellant.

Thomas W. Pomeroy, Jr., Carl E. Glock, and Smith, Shaw, McClay & Seifert, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a judgment of the District Court for the Western District of Pennsylvania. On March 18, 1931, the appellant borrowed $15,000 from the Monongahela National Bank of Pittsburgh. He gave the bank a note secured by 140 shares of stock of the People's City Bank of McKeesport, Pa., and 1,000 shares of stock of Columbia Radiator Company, as collateral. The bank suspended operations on October 21, 1931, and the appellee was appointed receiver thereof. He sold the stock at private sale for $7,000 and brought suit in assumpsit for $8,000 due on the note. The defense was that the appellee failed to act in good faith and to use due diligence in that the stock had been sold without any prior demand upon the appellant for the payment of the note and without notice to him of the sale. In the original affidavit of defense the appellant pleaded, by way of set-off and counterclaim, that the stock sold had a market price at the time of the sale of $20,500; that the price for which it had been wrongfully sold was inadequate; and that he had been damaged in the sum of $13,500. He therefore asked for affirmative damages in the sum of $5,500. In a supplemental affidavit of defense he claimed an additional set-off and counterclaim based on a joint account which he carried in the bank in the sum of $6,770.67. The appellee agreed to allow this set-off, and thereby reduced the bank's claim to $1,229.33.

The District Court instructed the jury to restrict its verdict to the issues raised by the defense and to ignore the questions raised by the original set-off and counterclaim. After the case had been submitted to the jury, the appellant asked for leave to withdraw his supplemental set-off and counterclaim. This was refused. The jury returned a verdict for the appellant on the suit brought by the appellee.

The refusal of the District Court to submit the original set-off and counterclaim to the jury is assigned as error. The theory of the District Court is that the suit for damages arising out of the failure of the appellee to act in good faith and use due diligence in selling the stock sounded in tort, and that a set-off and counterclaim based on a tort cannot be pleaded in an action arising in assumpsit.

It is beyond dispute that the Pennsylvania Defalcation Act of 1705 (1 Smith's Laws, 49), 12 PS §§ 601, 1071, 5 PS § 8 and the Act of May 14, 1915, P. L. 483, § 14, amended by Act April 22, 1929, P. L. 627, § 2 (12 PS § 431), were restricted to actions ex contractu. The latter act reads: "In actions of assumpsit a defendant may set off, or set up by way of counter-claim against the claim of the plaintiff, any right or claim for which an action of assumpsit would lie, and a verdict may be rendered in his favor for the amount found to be due, and judgment entered thereon. * * *"

It is also beyond dispute that the Pennsylvania Act of April 4, 1929, P. L. 140, § 1 (12 PS § 412), amending Act May 14, 1915, P. L. 483, § 13, is limited to set-off in actions ex delicto. This act provides: "* * * The defendant in such actions [i. e. actions of trespass] may, by affidavit of defense, in addition to denying negligence on his own part, allege negligence on the part of the plaintiff, and set up against the plaintiff, in the manner by this act prescribed, a claim for damages arising out of the same general circumstances upon which the plaintiff's claim is based, and both claims shall in the said cause be tried as one action."

Neither statutory nor common law in Pennsylvania grants a defendant, sued in assumpsit, the right to set off a claim sounding in tort. We therefore agree with the District Court that, if the appellant's claim sounded in tort, his remedy was not by way of set-off and counterclaim.

The District Court properly relied upon Dushane v. Benedict, 120 U. S. 630, 7 S. Ct. 696, 30 L. Ed. 810, for this ruling. The Supreme Court there held that under the Pennsylvania Defalcation Act of 1705, which allows a defendant in an action upon a contract to set off any matter of contract, the defendant, when sued for goods sold and delivered, may set off a claim in the nature of assumpsit upon a warranty, but may not set off a claim for a fraudulent representation or any other claim sounding in tort only. The gist of this decision is that the court must first determine that the cause of action arises out of contract before it permits a set-off and counterclaim to a contract action. The Supreme Court did not have before it the question whether an action for the wrongful sale by a pledgee of stocks pledged as collateral security sounds in tort or contract.

On that issue there is direct authority in Brown v. First National Bank (C. C. A.) 132 F. 450, 452, certiorari denied 196 U. S. 641, 25 S. Ct. 796, 49 L. Ed. 631. The Eighth Circuit there held that a pledgor has the option of bringing a tort or contract action for the wrongful surrender of collateral security by a pledgee. After setting forth the facts, the court said: "They [i. e. the facts] undoubtedly constituted a tort and a cause of action for conversion. * * * But the pledgor had the option to waive the tort, and to sue for breach of the contract."

The Pennsylvania courts have ruled to the same effect. In Zell v. Dunkle, 156 Pa. 353, 27 A. 38, a boiler left with the defendants for repairs was destroyed by fire. The plaintiff sued in assumpsit and the court entered a nonsuit upon the ground that the cause of action was in tort. The Supreme Court of Pennsylvania, in an opinion reversing the lower court, said: "If there had been no previous contract relation between the parties, damages occasioned by the negligence of the defendants could have been recovered only in an action on the case; but the fact that the boiler came into the possession of the defendants by reason of, or as incidental to, the contract for repairs to be made upon it, imposed the duty upon the defendants to exercise ordinary care for the safety and preservation of their customer's property. By receiving the boiler into their possession for the purpose of repairing, they must be held to have subjected themselves to an undertaking, implied from the nature of the express contract for repairs, to do what, in good faith and common fairness, ought to be done for the protection of their customer's goods. If they have failed in the performance of the duty imposed by this implied undertaking, an action of assumpsit will lie. At the same time, it is true that if the failure involves a tort, such as the willful destruction of his customer's goods, or a conversion of them to his own use, he may be proceeded against, at the election of his customer, for the tort, and in an action ex delicto. * * * Upon the facts of this case we think assumpsit was a proper form of action, and.

the learned judge erred in entering the nonsuit for the reason given by him,—that the action should have been an action of trespass on the case."

In Stanton v. Phila. & Reading Ry. Co., 236 Pa. 419, 84 A. 832, 833, the plaintiff brought an action of assumpsit to recover the value of celery, damaged because of the negligence of the defendant which had agreed to store the celery in its cold storage warehouse. The defendant claimed that no affidavit of defense was necessary because the action was based on negligence. The lower court's judgment for want of a sufficient affidavit of defense was affirmed by the Supreme Court of Pennsylvania, which said: "It is clear that the legal wrong with which the defendant is charged is the breach of a contract. The plaintiff seeks to hold it responsible for the consequences of its failure to perform certain acts in the way in which it is alleged it agreed to perform them. The source of the obligation resting upon the defendant is the contract which is alleged to be broken. Therefore assumpsit was the proper form of action to pursue in seeking a remedy. The fact that the breach of the contract occurred through negligence which was tortious in its character makes no difference."

The principles enunciated by the state appellate court in the above cases will be followed by the federal courts. Frank L. Young Co. v. McNeal-Edwards Co., 283 U. S. 398, 51 S. Ct. 538, 75 L. Ed. 1140.

In the instant case the pledge of the stock amounted to a contract of bailment and an implied undertaking by the bailee to use his best efforts to realize the full value of the bailed property. Failure to act in good faith and to use due diligence to obtain the best market price for the pledged stock was a breach of contract for which an action in assumpsit lies.

We are convinced by the authorities previously discussed that the set-off and counterclaim was properly pleaded in assumpsit. The court below was in error in refusing to submit to the jury the issues raised by this pleading.

In view of our ruling on this point, we do not deem it necessary to discuss the right of the appellant to withdraw his set-off and counterclaim after the court had charged the jury.

The judgment is reversed, with a venire de novo.