## WINGATE *v.* MECHANICS' BANK.

Evidence of the contents of a placard posted up in a bank, offering to make collections on certain terms, is admissible, when the president after notice to produce did not account for it, in an action against the bank for negligence in failing to make a collection, without proof that the plaintiff read it and acted on its faith.

Parol evidence admissible to explain the meaning of short entries in a bank-book, in an action against the bank.

Where a bank received for collection a note payable in another state, under an agreement to collect it for 7 per cent., and neglected to give information of non-payment, and to return the note to the depositor within a reasonable time, they are liable to an action.

And if, at the time of the trial, the note is barred by the statute of limitations, and the bank has never until then returned it to the depositor, and there is no evidence of the insolvency of the maker, the measure of damages will be the amount due on the face of the note, with interest, less the 7 per cent. to be paid for collection.

Where, under a count for negligence in not collecting, the case has been tried on the merits without objection, and the recovery was on the ground of neglect to inform the depositor of the non-payment, and to return him the note: the variance cannot be objected in error.

CERTIFICATE from the Nisi Prius.

This was an action against the plaintiffs in error, for undertaking to collect a note and certificate of deposit, for plaintiffs below, in consideration of receiving 7 per cent.

It appeared that the bank had put up in its banking-house placards, and also distributed them among its customers, offering to collect drafts on certain points in Mississippi, for 7 per cent. Shortly after this, the plaintiffs deposited with them a note, which was entered in their bank-book

> "1838, Nov. 10.   D. Clarke & Co., Aberdeen.
> "7 per cent.   $858.57;"

and a certificate of deposit entered

> "1838, Nov. 13.   W. W. Harley, Holly Springs.
> "7 per cent.   $285.00."

These were sent by the bank to its agent in Mississippi for collection, but the amounts were not collected, because D. Clarke, having deposited funds to meet the note in a bank whose notes were at a great discount there, refused to pay; and the notes of the bank which gave the certificate of deposit, were also at a discount, and it had no funds when the certificate was presented.

On the 22d April, 1839, they were returned to the bank here as uncollectable, unless in funds 20 or 30 per cent. below par; but the bank gave no notice to the plaintiffs, who, it was proved, often called and requested the bank would extend them.

It also appeared, that the defendants had undertaken these collections under a supposition that Mississippi funds would, shortly after that time, rise in the market, so that the exchange would not exceed 2 per cent.

The questions of evidence were: 1. In permitting evidence to be given of the contents of the placard, which his honour allowed, after a notice to produce, and a failure of the president to appear and account for it.

2. In admitting evidence that the entries in the bank-book meant, that the bank was to collect and pay over the funds for 7 per cent.

3. In admitting the statutes of Mississippi in evidence to show

VOL. X.—14

that, at the time of the trial, all right of action on the note and certificate was gone by the statute of limitations.

His honour, ROGERS, J., left it to the jury to say, whether the bank had undertaken to collect the note and certificate, or merely to forward them for collection. If the former, it was their duty to use due means for that purpose, and to advise the plaintiffs of the state of affairs, and if they were not paid, to return them to plaintiffs within a reasonable time. That they were to look to the contract, if there was one, to determine whether the bank undertook to collect in current funds—that there was nothing in the defendants' charter to prohibit them making such a contract. If the defendants had failed in this, there being no evidence that the plaintiffs could not have obtained payment by compulsory proceedings, the defendants were liable for the amounts with interest.

*V. L. Bradford*, for plaintiffs in error, argued that the placard would not have been evidence, because there was no proof plaintiffs saw it; that the evidence of the statute of limitations was inadmissible, because the action was not barred when this suit was brought, and subsequent damage could not be shown; that parol evidence was inadmissible to explain the entries in the bank-book, which were unintelligible; that the undertaking was merely to transfer the funds collected, for 7 per cent.; that the defendants were prohibited by their charter from dealing in bills of exchange, and hence the contract was void; that the bank was not bound and could not give information to all its customers as ordinary agents, and that the plaintiffs were bound to inquire what had become of the notes; that there was no evidence of loss or damage to the plaintiffs, and that the *narr.* should have specially stated the cause of action, if a failure to notify, &c., was the ground of recovery.

*St. G. T. Campbell* and *Meredith*, contrà.—The evidence showed that the contract at the time was deemed a good one by the bank, and the question is, can they escape from it? That we could not produce evidence to translate short entries of a bank-book into intelligible language, and that, too, in a suit against the bank, would be extraordinary indeed. If then the bank did make the contract as proved, the consequences result as stated by the judge, who has followed the language of Story on Agency, § 208. In 4 Raw. 223, 4 W. & S. 305, and 6 W. & S. 402, the declaration was in the same form as here; and it must be so, else an agent

may defeat any action by showing his own wrong conduct at the trial, which he has concealed before; but it is now too late to take this objection: 4 Barr, 317.

The statute of limitations was only used to show that the production of the note and certificate at the trial was too late to be of service.

*March 5.* COULTER, J.—Twenty-four errors are assigned to this record, and they are supported by a learned and voluminous printed argument, submitted by the counsel for the plaintiffs in error. The material points in the case will be considered: the others, consist either of disquisitions upon facts, which the court properly referred to the jury for their consideration and determination, or else are helps and corollaries of those that will be considered, and must follow their fate.

The first six points relate to the admission of evidence. [His honour here stated the alleged contract, and the evidence of the contents of the placard, and the meaning of the entries in the bank-book.] The whole of this evidence was rightfully admitted.

The placard and its contents were german to the issue, that is, if the testimony of its contents given by the witnesses was true; and, if it had been produced, would have explained and rendered clear the meaning of the words "seven per cent.," entered by defendants in the plaintiffs' bank-book; and, according to the plainest dictates of common sense and honesty, evidence of its contents, when the defendants declined to produce it, or prove its loss, could not be refused. It was not *the* contract, but an important link in the chain of evidence necessary to prove the contract; and, when the defendants refused to produce it, no alternative was left to the plaintiffs, but to supply, by parol evidence, the written document, which his adversary failed to produce on notice. The parol evidence, to explain the meaning of the entry of "seven per cent." in the bank-book, was also competent and relevant. If a contract is in cipher, or a part of it, or if technical terms are used, or words of art, unintelligible to the court and jury, but which have a well-known meaning among mechanics and merchants, parol evidence is admissible to explain the meaning and give the words their known signification: Daintree *v.* Hutchinson, 10 M. & W. 89; Goblet *v.* Beechey, 3 Sim. 24.

The statute of the state of Mississippi, which provides that the action of assumpsit must be brought within six years after the cause of action has accrued, or else the claim is barred, was right-

fully admitted in evidence; because, if the defendants were negligent and took no steps towards the collection of the notes until they were barred by the statute, it was evidence that the demand was lost by their supineness, and went to the extent or amount of damage suffered. The statute would be of no consequence in the cause, unless the contract for collection by defendants was proved to the satisfaction of the jury, or unless negligence was established. But the court could not assume that they were not established, and therefore reject the testimony.

The substantial questions in this case are, Was the contract to collect the notes, by the defendants below, for 7 per cent., established; and, if so, were they guilty of such negligence, under that contract, as to make them liable to the plaintiffs for the loss incurred in consequence of it? These are the bone and sinews of the case; and the weight of these questions fell upon the jury. Because the law is clear, that if an agent undertake to do a specified thing for a stipulated reward, he is bound to exercise due diligence to accomplish what he has agreed to do; and to observe good faith towards his principal in every step, either of success or failure, towards accomplishing the end. The law implies a promise from brokers, bankers, or agents, and attorneys, that they will severally, in their respective callings, exercise competent skill and proper care in the service they undertake to perform; in which, if they fail, an action lies to recover damages for the breach of their implied promise: Boorman v. Brown, 3 Ad. & E. N. S. 511. Was, then, the contract proved? That question was distinctly referred by the court to the jury; and properly so referred. It was not a written contract which the plaintiffs relied on, and which would have been in the province of the court. The placard and entry in the plaintiffs' bank-book were evidence: they were both and each important links in the chain of testimony by which the plaintiffs sought to establish a contract. If the defendants had produced the placard or advertisement, put up by defendants in the bank, the nature of the business they proposed to transact, and the terms, would have been manifest; and the entry in the bank-books conduced to prove that the plaintiffs accepted those terms, and deposited the notes accordingly. There was no supplying of words, nor anything added to, or taken from a written contract. The effort was, to make out by parol testimony a contract, part of the evidence of which was printed, and withheld by defendants; and the withholding of which, or not establishing its loss, justified as severe a presumption as the evidence would tolerate against the

defendants.   The existence of the entry in the bank-book, did not so cripple the case of the plaintiffs as to compel them to rely on it as the written contract, which the plaintiffs in error contend; nor compel them to rely solely on what the plaintiffs in error allege was altogether insensible.   That was only a link in the chain.   If a written document amounts only to an acknowledgment of certain facts, forming a link in the chain of evidence by which a contract is sought to be established, it may be given in evidence concurrently with, and may be supported and aided by oral testimony: Allen v. Pink, 4 M. & W. 144.

The learned judge at Nisi Prius instructed the jury, that if the contract or agreement by defendants was not to collect the notes deposited, but merely an engagement to transmit them to a responsible person in Mississippi, the defendants were not liable, because they had transmitted them to a bank in good credit, that is, the Bank of Rodney: but that the agent in Mississippi, if guilty of negligence, was responsible.   That is, if the Bank of Rodney was the agent of the plaintiffs below, and not of the defendants, in such case the defendants were not answerable or liable; and this instruction, so far from being in opposition to the case of Mechanics' Bank v. Earp, 4 Raw. 390, is in exact conformity with it.   The next material point is, as to the exercise of due diligence by defendants; if the jury were of opinion that the contract alleged was proved; and whether, in the exercise of due diligence, the defendants were not bound to give notice to the plaintiffs that they could not collect the notes.   The court instructed the jury, that if the evidence satisfied them that the contract alleged was in fact made, it was incumbent on the defendants to show that all prudential measures, such as a careful man would use in his own case and business, were adopted towards collecting the notes; and that, if they were not successful in a reasonable time, the defendants were bound to give notice to the plaintiffs, and return the notes, or put them in the power of the plaintiffs in the state of Mississippi.

And this was doubtless the true law of the case.   It is laid down as the law in Story on Agency, § 208, that "it is the duty of agents to keep their principals advised of their doings, and to give them notice in a reasonable time of all such facts and circumstances as may be important to their interests."   In Mechanics' Bank v. Earp, before referred to, it was held that notice was not necessary in that case, because the contract on the part of the bank was to transmit the notes to a particular bank, with the instructions of the owner of the notes, and was not an agreement

K

on the part of the bank to collect the notes for a stipulated reward; but a plain intimation is given, that if the agreement had been to collect the notes, notice would have been necessary. And in the exercise of good faith to his principal, the agent ought to be held to the giving such notice, whether the agent be an individual or a bank; for banks are subject to the settled law of contracts, as well as individuals.

The reason and nature of the transaction shows that notice is and ought to be required. Because the principal, stimulated into greater energy and activity by his deeper stake and the danger of loss, may employ more vigorous measures and a closer espionage, and thereby be successful. He has, at all events, a just right to that chance.

The plaintiffs in error contend that they had no lawful right to make such contract, being inhibited by that part of the statute which forbids banks from trading in stock, notes, bills, &c.; so that, even if they did contract, and, by asserting a power which they did not possess, they induced the plaintiffs to trust them, and thereby suffer loss and damage, they are not liable in law, however it may be in morals. The law does not countenance such laxity of principle. For, although the law will not lend its aid to enforce a contract against public policy or the provisions of an act of the legislature, yet it will not cover with immunity a party who has done a work of mischief to another under a false assertion of right and authority. But the true answer to the point is, that the statute does not prohibit such a contract as was made in this case. It was not a buying and selling or a trading in bills and notes, but an agreement to collect notes for a stipulated reward; an operation constantly practised by banks in this state and elsewhere; not against public policy, but according to the course of trade and the usage of merchants.

The error assigned as to the declaration, embracing only the general counts, and not being framed on the special contract, is of no moment now. If that exception had been taken on the trial, leave would have been given to amend. There has been a full trial on the merits, embracing the very special contract, which might have been set out in the *narr.* and a verdict and judgment. We cannot disturb it on a mere technicality, alleged out of leave and place, and which could have done the defendant no detriment. The law is against doing it.

This court is of opinion that none of the twenty-four errors assigned have been sustained.

Judgment affirmed.