## Zell, Appellant, *v.* Dunkle et al.

[Marked to be reported.]

*Bailment—Locatio operis—Duty of bailee.*

The obligations imposed by a locatio operis and capable of enforcement by an action on the contract are as follows: (*a*) To do the work which is the subject of the undertaking; (*b*) to do it within the time agreed on, or within what may be, in view of all the circumstances, a proper time; (*c*) to do it in a proper manner; (*d*) to surrender the property on which the labor has been expended on payment for the work done.

The bailee in a locatio operis also subjects himself to an undertaking, implied from the nature of the express contract for repairs, to do what in good faith and common fairness ought to be done for the protection of his customer's goods.

*Remedies—Assumpsit—Trespass—Tort.*

If the goods in the hands of the bailee under a locatio operis are lost by the fraud, or by the willful or wanton conduct of the bailee, the bailor has a right either to an action of assumpsit on the contract, or to an action ex delicto for the tort.

*Bailment—Measure of care to be observed by bailee.*

If a bailee under a locatio operis stores and cares for his customer's goods in the same manner that he has stored and cared for his own, and a common disaster destroys both, the bailee will not be liable for the loss, in the absence of clear proof of the omission of precautions commonly taken by other persons in the same or similar trade.

Defendant, who was engaged in the business of repairing boilers, received plaintiff's boiler for repairs, and stored it in a building used for the storage of engines and boilers belonging to defendant, and cared for in the same manner that his own property of the same kind was cared for. No watchman was employed in the storage building, but there was no proof that it was customary to employ a watchman in such a building by other

persons engaged in the same business. The storage building was burned down by an incendiary fire, and plaintiff's boiler was injured. *Held*, that defendant was not liable for the loss.

Argued May 17, 1893. Appeal, No. 274, Jan. T., 1893, by plaintiff, Aaron Zell, from judgment of C. P. Lancaster Co.,. August T., 1889, No. 131, entering nonsuit in favor of defendants, S. F. Dunkle et al., trading as Star Heating Co. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Appeal by defendants from judgment of justice of peace.

Plaintiff's statement was as follows :

"The cause of action is based and founded upon damages sustained by plaintiff at the hands of defendants. Defendants had left with them by plaintiff or his servants, at their place of business in Mount Joy, a steam boiler to be repaired by said defendants (repairing steam boilers being part of their business). Said steam boiler was left with defendants about the latter part of the month of April or beginning of the month of May,. A. D. 1889, by plaintiff, or his hands or employees ; said repairs were to be done and completed in a workmanlike manner by defendants on or before June 1, A. D. 1889, and ready for delivery to plaintiff on or before that time at defendants' place of business, as aforesaid. That said defendants neglected and refused to make said repairs as aforesaid, or by the time as set forth above, although plaintiff offered to receive and take said boiler before, at and immediately after June 1, 1889, or on or about that time,. if repaired properly, and was both willing and able to pay defendants for the repairs or value thereof when completed. That by reason of the negligence, refusal or breach of contract, without any fault on the part of plaintiff, he sustained damages at the hands of said defendants ; the said steam boiler having been burned, injured, damaged and destroyed at the defendants' place in Mount Joy, Pa., about the latter part of June or beginning of July, A. D. 1889, and is of little or no value by reason thereof.

"Wherefore, plaintiff has sustained damages in the sum of one hundred dollars, with interest since the time of said injury."

An amendment to the statement was filed as follows :

"That defendants or their employees promised and agreed to repair said boiler for said plaintiff at their place of business

as aforesaid, and that it was also understood and agreed that plaintiff was to pay defendants for the same as much as it was. reasonably worth to repair the same. That said defendants, promised and agreed that said repairs were to be completed,. and the said boiler was to be delivered as completed at their place of business as aforesaid, on or before June 1, 1889, which the defendants by reason of their negligence and breach of contract as aforesaid did not do, although plaintiff was willing and offered to comply with his part of said agreement on or before said date. That said repairs were agreed by defendants to be performed within a reasonable time, and never were done; and that by reason of their negligence and breach of contract, said boiler was destroyed and became a total loss to plaintiff; and further, plaintiff claims damages in the sum of three hundred dollars."

Defendants' plea was non assumpserunt.

The facts appear by the opinion of the Supreme Court.

The court, McMULLIN, J., entered a compulsory nonsuit and subsequently refused to take it off.

*Errors assigned* were (1, 2) refusal to strike off nonsuit; (3) in holding that the justice of the peace had no jurisdiction.

*B. F. Davis*, for appellant.—Assumpsit would lie for the loss : McCahan v. Hirst, 7 Watts, 175 ; Todd v. Figley, 7 Watts, 542 ; Hunt v. Wynn, 6 Watts, 47 ; Smith v. Seward, 3 Pa. 345 ; M'Call v. Forsyth, 4 W. & S. 179 ; Reeside's Ex'rs v. Reeside, 49 Pa. 322.

The loss by fire would not exonerate defendants, unless occasioned by the act of God or inevitable accident not attributable to human agency : 1 Addison on Contracts, *496 ; McArthur v. Sears, 21 Wend. 190 ; Plaisted v. Nav. Co., 27 Me. 132 ; Graff v. Bloomer, 9 Pa. 114 ; Pattison v. Wallace, 1 Stew. (Ala.) 48.

The onus lies upon the defendants to show proper care, and that there was no negligence : Whitesides v. Russell, 8 W. & S. 44 ; Shenk v. Phila. Steam Propeller Co., 60 Pa. 109. And it is also a question for the jury : Woodruff v. Painter & Eldridge, 150 Pa. 91 ; Verner v. Sweitzer, 32 Pa. 208 ; Brown & Co. v. Baker, 15 W. N. 60 ; Wentworth v. McDuffie, 48 N. H. 406.

The bailees detained the goods beyond the time they agreed to deliver them, hence are liable to an action.

Assumpsit or trover will lie: Redfield on Bailment, 478; 2 Chitty on Pleading, 340; Esher v. Flagler, 17 S. & R. 141; Lyon v. Chalker, 2 Watts, 14.

*J. Hay Brown,* W. U. Hensel with him, for appellee.—The justice had no jurisdiction: Zell v. Arnold, 2 P. & W. 292; Grosky v. Wright, 2 Kulp, 415; Douglass v. Davidson, 1 Phila. 516.

A justice has no jurisdiction of a special action on the case for negligence in the performance of work; it is substantially a tort, though a tort deducible from the existence of a contract: Mann v. Bower, 8 Watts, 179; Henion v. Morton, 2 Ash. 150; Dormer v. Handwick, 1 Leg. Ch. 293.

OPINION BY MR. JUSTICE WILLIAMS, July 19, 1893:

In the spring of 1889 the plaintiff purchased at public sale an engine and boiler. The boiler was out of repair and unfit for use. The defendants had a shop at Mount Joy, Lancaster county, at which they made and repaired steam boilers. The plaintiff sent the boiler he had purchased to the defendant's shop for repairs in the early part of May. They engaged to make the repairs and have the work done by the first day of June. The repairs were not made at the time agreed on, and before they were made, viz., on the twenty-second day of June, 1889, the shop was destroyed by an incendiary fire, and the plaintiff's boiler was so injured by the heat as to be rendered practically worthless.

This action was brought to recover the value of the boiler. At the trial, the learned judge of the court below entered a compulsory nonsuit, for the reason that the cause of action was one that could not be recovered for in assumpsit. This ruling is the error assigned. The contract between these parties was for the performance of certain mechanical labor and the supply of necessary materials therefor, in the repair of the boiler. This kind of an agreement is described by text writers as loca-tio operis. The subject of the contract is labor, to be expended by the workman on the property of the hirer, for an agreed price, or upon a quantum meruit. The possession of the article

on which the labor is to be expended passes to the workman for the purposes of the contract. Its storage, from the time the article is received until the work upon it is completed, is a necessary incident of the undertaking of the workman. The obligations imposed by the locatio operis and capable of enforcement by an action on the contract are as follows: (*a*) To do the work which is the subject of the undertaking; (*b*) to do it within the time agreed on, or within what may be, in view of all the circumstances, a proper time; (*c*) to do it in a proper manner; (*d*) to surrender the property on which the labor has been expended on payment for the work done.

This action is not brought to enforce either of these obligations, but, as is stated in the testimony of the plaintiff, and in the declaration on file, it is brought to recover the value of the boiler destroyed in the fire, on the theory that the defendant's negligence caused the loss. If there had been no previous contract relation between the parties, damages occasioned by the negligence of the defendant could have been recovered only in an action on the case; but the fact that the boiler came into the possession of the defendants by reason of, or as incidental to, the contract for repairs to be made upon it, imposed the duty upon the defendants to exercise ordinary care for the safety and preservation of their customer's property. By receiving the boiler into their possession for the purpose of repairing, they must be held to have subjected themselves to an undertaking, implied from the nature of the express contract for repairs, to do what in good faith and common fairness ought to be done for the protection of their customer's goods. If they have failed in the performance of the duty imposed by this implied undertaking, an action of assumpsit will lie. At the same time it is true that if the failure involves a tort, such as the willful destruction of his customer's goods, or a conversion of them to his own use, he may be proceeded against, at the election of his customer, for the tort and in an action ex delicto. In Reeside's Ex. v. Reeside, 49 Pa. 322, it was held that when a duty arises out of an implied undertaking to do an act requiring skill or fidelity an action of assumpsit will lie to enforce the duty, or an action on the case for the tort, involved in the breach of duty, may be sustained. The liability of a carrier is analogous to that of the mechanic in this case. His

undertaking is to carry and deliver to the consignee. If he fails to deliver the article he is liable on his contract, whether the cause of his failure be his negligence, his fraud, or his crime, for his contract is broken in either case. But if the cause of his failure be his own fraud or felony, he may, at the election of his customer, be proceeded against for his tort in any appropriate form of action ex delicto. Hunt v. Wynn, 6 Watts, 47, is among the cases in which this doctrine has been laid down. Upon the facts of this case we think assumpsit was a proper form of action, and the learned judge erred in entering the nonsuit, for the reason given by him that the action should have been an action of ·trespass on the case.

But was the plaintiff entitled to go to the jury upon the case made by him ? The care which the defendants were, under an implied undertaking, to exercise for the safety of their customer's goods, was ordinary care only. If the article be lost by theft, fire, or otherwise, notwithstanding the exercise of ordinary care, the loss falls on the owner of the goods and not on the workman. If the loss be due to the want of ordinary care, then it falls on the workman : 1 Bouv. Inst. § 1007. The burden of showing negligence is on him who alleges it. It was the duty of the plaintiff to show, affirmatively, conduct on the part of the defendants that amounted to a breach of the implied undertaking to use ordinary care for the safety of the boiler left with them for repairs, and failing in this the court was right in taking the case from the jury. The evidence show ed that the boiler was stored in a building used for the storage of engines and boilers belonging to the defendants, and cared for in the same manner that their own property of the same kind was cared for. The effect of this evidence was not to prove, but to disprove negligence. The only item of evidence from which it is alleged negligence could be found was that no watchman was employed at the storage building during the night to protect it from incendiary fires. Whether this was required by ordinary care did not appear. There was no proof of the practice of other persons engaged in the same business ; no testimony by machinists or other iron workers that ordinary care required that such buildings and such articles should be guarded at night by a private watchman to protect them from fire. It is very plain that ordinary diligence or care is that measure

of care and diligence ordinarily employed in a given business. What measure of care is ordinarily employed is a question to be determined from the evidence. When this is determined, the next question is whether the defendant has exercised the proper measure of care in the case under consideration.

If he has not done what is usually done by persons following his occupation, for the safety of his customer's goods, but has neglected precautions commonly made use of for that purpose, then he may justly be called on to make good his customer's loss. But if he has stored and cared for his customer's goods in the same manner that he has stored and cared for his own, and a common disaster destroys both, it ought to require clear proof of the omission of precautions commonly taken by other persons in the same or similar trades to justify a recovery.

Upon the whole case as it stood when the plaintiff closed his testimony, there was not such evidence before the court and jury as to justify a verdict for the plaintiff, and for this reason the nonsuit was properly entered.

The judgment was right, though the reason was wrong.

The judgment is affirmed.