NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1541
_____

NEW YORK CENTRAL MUTUAL INSURANCE COMPANY;
ST. PAUL MERCURY INSURANCE COMPANY,
Appellants

v.

MARGOLIS EDELSTEIN; MICHAEL T. SAVITSKY, Esquire

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C.# 3:14-cv-00829)
District Judge: Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 21, 2016
_____

Before: JORDAN, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: February 1, 2016)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Appellants, New York Central Mutual Insurance Company ("NYCM") and St. Paul Mercury Insurance Company ("St. Paul"), appeal the District Court's order dismissing their Second Amended Complaint with prejudice. Appellants alleged one count of breach of contract against Appellees Michael T. Savitsky, Esquire, and the law firm Margolis Edelstein. For the following reasons, we will affirm the District Court's dismissal.

## I. BACKGROUND

In 2003, Cheryl Shannon was injured in an accident involving an automobile driven by Marcial Gonzalez and insured by NYCM. Following negotiations in which NYCM refused to pay the full insurance policy limit of $25,000 for Shannon's injuries, Shannon sued Gonzalez in 2004. By 2009, Shannon's settlement demand had risen to $200,000. NYCM then retained Appellees to assess its exposure to a bad faith insurance claim under Pennsylvania law based on its handling of Shannon's claim.

In a letter dated November 16, 2009 from Savitsky to NYCM, he indicated that, prior to providing a legal opinion on NYCM's exposure, he would review NYCM's file, conduct the necessary legal research, and to be "completely thorough," meet with other firm counsel. App. 79.[1] In a letter dated January 29, 2010, Savitsky advised NYCM that he did not believe that there was a potential bad faith claim against NYCM based on its

---

[1] As the District Court observed, Appellants' Second Amended Complaint erroneously states the date of the letter using the phrase "completely thorough" as "November 19, 2003." App. 79 § 101; *see* App. 23. The correct date is November 16, 2009. App. 23; *see* App. 115.

conduct regarding Shannon's claim. *See id.* ¶ 102. In the same letter, Savitsky indicated that another legal opinion letter would be forthcoming after he reviewed additional materials. *See id.* ¶ 103. In a letter dated April 30, 2010, Savitsky confirmed his opinion that NYCM had no exposure to a bad faith claim and advised NYCM that it should not settle Shannon's claim for more than $25,000. *See* App. 79–80 ¶¶ 104–05.

Ultimately, after a jury trial, Shannon secured a judgment against Gonzalez for $906,000 and, having acquired Gonzalez's rights against NYCM, sued NYCM for breach of contract and insurance bad faith. NYCM in turn filed a claim with St. Paul, its insurer. In March 2014, Shannon negotiated a total settlement with Appellants for $2 million.

On April 29, 2014, Appellants commenced the present action alleging one count of breach of contract by Appellees. The District Court twice ordered Appellants to amend their complaint to properly allege diversity jurisdiction. Appellees then filed a motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Appellants' claim sounded in negligence, and therefore was time-barred by Pennsylvania's two-year statute of limitations for tort claims.[2]

Applying the gist of the action doctrine, the District Court concluded that Appellants' claim must be construed as a legal malpractice tort and dismissed it as time-barred by the applicable statute of limitations. The District Court also concluded that amendment to the Second Amended Complaint would be futile. Appellants timely appealed.

---

[2] The parties agree that the latest occurrence of the alleged malpractice—and, therefore, the date when the statute of limitations began to run—is April 30, 2010, the date of

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant 28 U.S.C. § 1332. We have jurisdiction pursuant 28 U.S.C. § 1291.

We exercise plenary review over a dismissal under Rule 12(b)(6). *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015). A court may "grant a motion under Rule 12(b)(6) raising a limitations defense if 'the face of the complaint' demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

## III. ANALYSIS

State tolling principles "'are generally to be used by a federal court when it is applying a state limitations period;' therefore, we look to Pennsylvania law, predicting how the Pennsylvania Supreme Court would resolve the statute of limitations issue." *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 128 (3d Cir. 2003)). "'When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source.'" *Id.* (quoting *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010)). We also look to decisions of state intermediate appellate courts and of federal courts interpreting that state's law. *Id.*

Pennsylvania imposes a two-year statute of limitations on tort claims, including a claim of legal malpractice. 42 Pa. Cons. Stat. § 5524. A four-year statute of limitations applies to breach of contract claims. *Id.* § 5525. "'Whether the statute [of limitations] has run on a claim is usually a question of law for the trial judge,'" unless the issue

---

Savitsky's last opinion letter. *See* App. 9–10.

involves a factual determination. *Hayward v. Med. Ctr. of Beaver Cty.*, 608 A.2d 1040, 1043 (Pa. 1992). Generally, "Pennsylvania favors strict application of statutes of limitations." *Knopick*, 639 F.3d at 606.

The Pennsylvania Supreme Court has recently reiterated how the gist of the action doctrine determines whether a cause of action, although arising from a contractual relationship, sounds in contract or in tort. The Court, in *Bruno v. Erie Insurance Company*, 106 A.3d 48 (Pa. 2014), explained that, if "the facts of a particular claim establish that the duty breached is one created by the parties *by the terms of the contract*—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract," then the claim should be treated as one for breach of contract. *Id.* at 68 (emphasis added). "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.* In sum, a claim sounds in negligence unless it is alleged that the party breached one of the "specific executory promises which comprise the contract." *Id.* at 70.[3]

---

[3] In a footnote of their brief, Appellants argue that the gist of the action doctrine should have no application in this case because the doctrine only precludes tort claims where the true gravamen of the claim sounds in contract and, here, Plaintiffs do not allege a tort claim. Appellants' Br. at 13 n.4. However, as the Pennsylvania Supreme Court explained in *Bruno*, it has applied the gist of the action analysis to determine, inter alia, whether the Court had jurisdiction over a matter and whether a particular jury instruction was proper. *See* 106 A.3d at 62–64 (discussing cases). Generally, the gist of the action doctrine applies "to resolve [] legal questions in which the distinction between the underlying action being a tort or a contract claim [is] dispositive." *Id.* at 60. In any event, "the mere labeling by the plaintiff of a claim . . . is not controlling." *Id.* at 68.

Here, Appellants' Second Amended Complaint alleges that Appellees: "provid[ed] NYCM with incorrect and erroneous legal advice"; provided "misleading" legal advice; failed "to conduct thorough legal research"; failed "to provide NYCM with a complete and correct analysis" of the applicable law; and exposed NYCM to damages in excess of Shannon's settlement demand of $200,000. App. 84–85 ¶¶ 135–40. Appellants repeatedly allege that, by each of these actions or failures, Appellees "breached their duty to exercise the degree of skill and knowledge that is ordinarily expected of a reasonable attorney" or "deviated from the standard of care of a reasonable attorney." *Id.*

The gravamen of Appellants' allegations is that Savitsky negligently performed his undertaking as a retained lawyer and thus failed to exercise the appropriate standard of professional care. Although the Second Amended Complaint references the November 16, 2009 letter from Savitsky stating that he would perform legal research and, to be "completely thorough," confer with additional counsel, App. at 83 ¶ 128, Appellants do not identify a specific contractual obligation that Appellees failed to perform or point to an explicit agreement or instruction that Appellees breached. Appellants do not allege, for example, that Savitsky failed to provide *any* legal opinion or advice—nor can they, as their Second Amended Complaint cites legal advice provided by Savitsky in the January 29 and April 30, 2010 letters. *See Bruno*, 106 A.3d at 70 (plaintiffs' claim sounded in negligence where plaintiffs "d[id] not allege that [defendant] failed to pay the $5,000 it was obliged to pay by the policy" but rather that the defendant's agents took "negligent actions" while performing on defendant's contractual obligations.").

6

Based on the allegations in their Second Amended Complaint, Appellants' malpractice claim arises from Savitsky's negligent performance of his contractual obligations and, therefore, sounds in tort. Thus, we conclude that this is a case in which the contract between Appellants and Appellees is best "regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed." *Id.*

Appellants argue that their Second Amended Complaint alleges a "breach of the implied contractual term to perform [Appellees'] services in a manner consistent with the profession at large." Appellants' Br. at 21. Appellants primarily rely on *Bailey v. Tucker*, 621 A.2d 108 (Pa. 1993), in which the Pennsylvania Supreme Court, during a discussion of breach of contract claims, observed that "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Id.* at 115; *see* Appellants' Br. at 23–27. However, given the Pennsylvania Supreme Court's delineation of contractual and tort claims in *Bruno*—according to which a claim sounding in contract is founded on the breach of "specific executory promises"—we decline to read the Court's dicta in *Bailey* as establishing a distinct contractual promise upon which a breach of contract claim may be premised.[4]

_____

[4] As noted by the District Court, there is intermediate appellate court support for Appellants' argument. *See* App. 18–20. In *Gorski v. Smith*, the Pennsylvania Superior Court stated:

> [A] plaintiff's successful establishment of a breach of contract claim against an attorney . . . does not require proof by a preponderance of the

7

Having concluded that Appellants' malpractice claim sounds in tort rather than contract, we therefore agree with the District Court that Appellants' tort claim is untimely because the action was filed outside of the two-year time period. We further conclude that the District Court properly found that further amendment to the Second Amended Complaint would be futile and dismissed it without providing leave to amend.[5]

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's dismissal of Appellants' Second Amended Complaint.

---

evidence that an attorney failed to follow a specific instruction of the client. . . . [I]f a plaintiff demonstrates by a preponderance of the evidence that an attorney has breached his or her contractual duty to provide legal service in a manner consistent with the profession at large, then the plaintiff has successfully established a breach of contract claim against the attorney.

812 A.2d 683, 697 (Pa. Super. Ct. 2002). However, applying the gist of the action doctrine as set forth in *Bruno*, we conclude that the District Court correctly found that Appellants' allegations sounded in tort rather than contract.

[5] We review the District Court's denial of leave to amend for abuse of discretion and its determination that amendment would be futile *de novo*. *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Generally, before dismissing a complaint, a district court should grant leave to amend unless it determines that amendment would be futile. *See id.* In addition, "'a District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.'" *Id.* (quoting *Krantz v. Prudential Invs. Fund Mgmt. L.L.C.*, 305 F.3d 140, 144 (3d Cir. 2002)). Here, Appellants were put on notice by Appellees' Motion to Dismiss based on the statute of limitations that their Second Amended Complaint may fail to allege a breach of contract claim. However, at no point did Appellants request leave to amend their Second Amended Complaint but, rather, argued in their Opposition to Appellees' Motion to Dismiss that their Second Amended Complaint successfully alleged a failure to perform specific services for NYCM. *See* 3:14-cv-00829, Dkt. No. 24 at 23–25. Based on the facts alleged in Appellants' Second Amended Complaint, we agree with the District Court that amendment would have been futile and that dismissal with prejudice was appropriate.