J-E04002-24                    2025 PA Super 138

| | | |
|---|---|---|
| ANN MARIE SWATT, PERSONAL REPRESENTATIVE OF THE ESTATE OF MADLYN BLUSIUS | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : : | |
| v. | : : : : | No. 1506 MDA 2021 |
| NOTTINGHAM VILLAGE; NOTTINGHAM MANAGEMENT, LLC; NOTTINGHAM VILLAGE RETIREMENT CENTER, LLC; NOTTINGHAM VILLAGE HEALTHCARE SERVICES, INC.; LEEDS HEALTHCARE SERVICES, INC.; SYNERGY GRANDVIEW PHARMACY, LLC AND FREDERICK KESSLER | : : : : : : : : : : : : : : | |

Appeal from the Order Entered October 12, 2021
In the Court of Common Pleas of Northumberland County
Civil Division at No:  CV-2014-00830

| | | |
|---|---|---|
| JANICE HAWBAKER, ESQ., EXECUTRIX OF THE ESTATE OF MADLYN BLUSIUS | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| NOTTINGHAM VILLAGE; NOTTINGHAM MANAGEMENT, LLC; NOTTINGHAM VILLAGE RETIREMENT CENTER, LLC; NOTTINGHAM VILLAGE HEALTHCARE SERVICES, INC.; AND LEEDS HEALTHCARE SERVICES, INC. | : : : : : : : : | No. 1507 MDA 2021 |
| APPEAL OF:  ANN MARIE SWATT, PERSONAL REPRESENTATIVE OF THE ESTATE OF MADLYN BLUSIUS | : : : : : | |

Appeal from the Order Dated October 12, 2021
In the Court of Common Pleas of Northumberland County
Civil Division at No:  CV-2014-00005

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., STABILE, J., DUBOW, J.,
KUNSELMAN, J., MURRAY, J., KING, J., SULLIVAN, J., and BECK, J.

CONCURRING/DISSENTING OPINION BY STABILE, J.: **FILED: JULY 2, 2025**

I concur in the result reached by the Majority as to the contract claims that are premised upon breach of express contractual undertakings, allowing them to survive the Nursing Home's motion for summary judgment.  I respectfully dissent to the extent that the Majority would find that the breach of only *implied* contractual duties may be sufficient for a breach of contract action, as I believe this conflicts with long-held controlling precedent, and most notably our Supreme Court's 2014 decision in **Bruno v. Erie Ins. Co.**, 106 A.3d 48 (Pa. 2014).

I also respectfully disagree with President Judge Lazarus's application of the relation back doctrine in her concurring opinion ("concurring opinion"), because it is inconsistent with our Supreme Court's decision in **Estate of Gasbarini v. Medical Ctr. of Beaver Cnty.**, 409 A.2d 343 (Pa. 1979).  I concur, however, with President Judge Lazarus's conclusion that the relation back doctrine does not save Elizabeth's survival action.

## I.    Gist of the Action

It is my understanding, based upon binding precedent, that a plaintiff may only pursue a remedy in contract (assumpsit) where the defendant has

- 2 -

breached an expressly agreed upon contractual term. This requirement prohibits recovery in contract where the *only* duty breached is implied by operation of law. I therefore dissent from the Majority's decision to the extent it says otherwise.

The central issue in these *en banc* proceedings is whether "the gist of the action doctrine" precludes the breach of contract claims asserted by Ann Marie Swatt, as personal representative of the Estate of Madlyn Blusius (Swatt). But framing the issue this way is somewhat of a misnomer because the more fundamental task of our review is simply to determine whether the trial court erred in dismissing Swatt's breach of contract claims on the ground that they were, in actuality, untimely tort claims barred by the statute of limitations.

The gist of the action doctrine[1] has long been used to differentiate negligence actions that sound in tort from breach of contract actions sounding in assumpsit. ***See Dittman v. UPMC***, 196 A.3d 1036, 1057 n.4 (Pa. 2018) (Saylor, J., concurring and dissenting) ("The gist of the action doctrine serves as a means by which courts categorize claims to maintain the distinction

---

[1] The Majority has commendably tracked down when and how "the gist of the action" haphazardly came to be referred to as a "doctrine" about 26 years ago, in ***Sunquest Info Sys., Inc. v. Dean Witter Reynolds, Inc***., 40 F. Supp.2d 644, 651 (W.D. Pa. 1999). However, I do not think it is fair to say that the ***Sunquest*** court "created" the doctrine by referring to it as one. A "doctrine" is defined generally as nothing more than a "legal principle, that is widely adhered to." ***See*** BLACK'S LAW DICTIONARY (12th ed. 2024). The basic principle of the "gist of the action" has been recognized in Pennsylvania since at least 1830. ***See Zell v. Arnold***, 2 Pen. & W. 292 (Pa. 1830).

between theories of breach of contract and tort."). In **Bruno**, our Supreme Court was crystal clear in holding that a breach of contract action must be "founded on the breach of any of the specific executory promises which comprise the contract." A breach of contract action cannot be viable unless the breach of a specific executory promise has been alleged. **See Bruno**, 106 A.3d at 70.[2]

I believe it is therefore inaccurate to suggest, as the Majority does, that the gist of the action doctrine cannot come into play where a breach of contract claim has been asserted in a party's complaint. If a tort claim is legally insufficient because the nature of the duty allegedly breached only arises from the terms of a contract, then it logically follows that a contract claim may be legally insufficient where the nature of the duty alleged only arises from tort. **See Bruno**, 106 A.3d at 70.

Further, Pennsylvania's gist of the action doctrine does not, as the Majority states, operate to force an "election" of remedies, "convert" one type of claim into another, or deprive a party of contractual rights by deeming *bona*

---

[2] Indeed, the Pennsylvania Rules of Civil Procedure do not reference "the gist of the action doctrine" as a ground for dismissal or for judgment to be entered in favor of the defending party. The relevant inquiry is whether a claim is sufficiently pleaded, **see** Pa.R.Civ.P. 1028(a)(4) (legal insufficiency (demurrer)), or the plaintiff has failed to produce sufficient facts essential to the cause of action, **see** Pa.R.Civ.P. 1035.2 (summary judgment). A litigant may discuss the gist of the action to distinguish one type of claim from another. When appropriate, the doctrine may be used to argue that a cause of action is deficient as a matter of law.

*fide* breach of contract claims as sounding only in tort. The doctrine is simply a tool which assists courts in ascertaining the nature of a claim, and the true source of the duty being alleged, regardless of how the claim is styled.

Nor has the doctrine ever, at least in modern times, been used by a Pennsylvania appellate state court to require a party to elect relief in tort or assumpsit, where either type of action is otherwise viable as pleaded. **See e.g., eToll, Inc. v. Elias/Savion Advertising, Inc.**, 811 A.2d 10, 14 (Pa. Super. 2002) (stating that "it is possible that a breach of contract also gives rise to an actionable tort."). I have found no such decision holding that a party is bound to choose between a tort or breach of contract claim despite that the elements of each type of cause of action have been met.[3]

Nevertheless, the Majority endeavors to drive home the already-established fact that tort claims and breach of contract claims may co-exist in a single action. The Majority goes astray in assuming that, since there are

---

[3] Granted, there is some language in a federal case discussed by the Majority, **Sunquest**, 40 F. Supp.2d 644, which arguably suggests that a party may not pursue a tort claim and a breach of contract in a single action. However, the underlying principle of the gist of the action was for the most part correctly summarized in that case. Further, **Sunquest** has only ever been cited in two Pennsylvania state appellate decisions, and neither of them relied on it for the proposition that a plaintiff must elect between otherwise sufficient tort and breach of contract claims that arise from the defendant's performance of a contract. In **Yocca v. Pittsburgh Steelers Sports, Inc**., 854 A.2d 425 (Pa. 2004), the gist of the action doctrine was not mentioned at all. In **eToll**, this Court held that a claim of fraud could not sound in tort because it was at its heart a breach of contract claim. The plaintiff was not forced into an "election" of remedies because the plaintiff never had a true tort claim to begin with. **See eToll**, 811 A.2d at 17.

implied duties, obligations, or promises in all contracts for professional services, and those implied terms are derived from tort-related public policy considerations, any breach of an implied contractual duty, alone, may sustain both a breach of contract claim and a tort claim in a single action. **See** Maj. Op., at 57-58. The Majority reasons from this dubious premise that, in the above scenario, the gist of the action doctrine can never be used to bar a breach of contract claim. **See id**. I believe this is incorrect, as such a rule would blur, and indeed, erase the distinctions between those causes of action, and amount to a significant departure from decades of Pennsylvania decisional law, including our Supreme Court's holding in **Bruno**.

To justify its approach, the Majority has reached back – far back – to find authorities permitting a breach of contract action to be based entirely on the breach of an implied duty, in the absence of a breach of an express contractual term. I question whether these cases still are germane to the state of the law in the present day, but in any event, they do not justify the Majority's new rule.

For example, the Majority cites **Wingate v. Mechanics' Bank**, 10 Pa. 104, 108 (Pa. 1848), **Zell v. Dunkle**, 27 A. 38 (Pa. 1893) (referred to as "**Zell II**" by the Majority), and other ancient cases seemingly for the proposition that the breach of an implied contractual obligation alone may sustain the duty element of a breach of contract action. My reading of those cases does not support the Majority's position.

In **Wingate**, our Supreme Court observed that an implied obligation of good faith is formed between contracting parties, and that a breach of contract action may be founded *in part* upon a party's failure to honor that implied promise. Yet, in the Court's reasoning, the implied term had to be *attendant* to an express and specified contractual undertaking:

> Because the law is clear, that **if an agent undertake to do a specified thing for a stipulated reward, he is bound to exercise due diligence to accomplish what he has agreed to do; and to observe good faith towards his principal in every step**, either of success or failure, towards accomplishing the end. The law implies a promise from brokers, bankers, or agents, and attorneys, that they will severally, in their respective callings, exercise competent skill and proper care **in the service they undertake to perform; in which, if they fail, an action lies to recover damages for the breach of their implied promise**.

**Wingate**, 10 Pa., at 109 (citing **Boorman v. Brown**, 8 Eng. Rep. 1003 (H.L. 1844)) (emphasis added).[4]

The defendant in the case, a bank, had contracted with the plaintiffs to make collections on their behalf, and the Court ruled that for such contracts,

---

[4] The **Wingate** Court cited **Brown**, where a judge in the English House of Lords ruled that a plaintiff could sue in both tort and assumpsit to recover damages. The plaintiffs in **Brown** had contracted with the defendant to deliver oil shipments to a third party; they alleged that the defendant breached an implied duty to receive the purchase price, as this would be necessary to carry out the contractual task with necessary care and skill. Without further rehashing the facts and statements of law in **Brown**, it suffices to say that the Majority has interpreted the case as holding that a plaintiff need not assert a breach of an express contractual term for an action in assumpsit as long as an implied contractual duty has been breached. Even if the English court said that, it is of no moment here because we are not governed by English law, and controlling authority in this jurisdiction requires the breach of an express contractual duty to sustain a breach of contract action.

"a plain intimation is given, that if the agreement had been to collect the notes, notice [to the customers that collection could not be timely made] would have been necessary." *Id*., at 110. The plaintiff could only sue in contract based on the bank's failure to fulfill the implied promise to give notice because that duty was incident to the specifically agreed upon task of collecting on the note, which the bank failed to do. *See id*.

Similarly, in *Zell*, the plaintiff hired the defendant to fix a boiler, and while the device was in the defendant's repair shop, it exploded. The plaintiff argued that the defendant negligently stored the object and thereby violated the contract of repair despite that there were no express terms regarding storage. Our Supreme Court found that the contract could still be breached in that manner because:

> **[the boiler's] storage**, from the time the article is received until the work upon it is completed, is **a necessary incident of the undertaking of the workman**.
>
> **By receiving the boiler into their possession for the purpose of repairing, they must be held to have subjected themselves to an undertaking, implied from the nature of the express contract for repairs, to do what, in good faith and common fairness, ought to be done for the protection of their customer's goods. If they have failed in the performance of the duty imposed by this implied undertaking, an action of assumpsit will lie.**

27 A. at 38 (emphasis added).

Again, the plaintiff in *Zell* was asserting that the defendant breached an implied contractual term requiring the storage of an item; the plaintiff was allowed to proceed with the contract claim despite the lack of express terms

concerning storage because it was implied and necessarily incident to express contractual terms. *See id*.

The salient point of **Wingate** and **Zell** is *not* that a breach of an implied duty, alone, may sustain a breach of contract action sounding in assumpsit. The Court was explaining in those cases that by entering into a contract to do a specific task, the defendant necessarily had agreed, through an implied obligation, also to do the things necessary for the completion of that task. The plaintiff only could sue in assumpsit based on the breach of implied duties insofar as they were essential for the performance of an express contractual undertaking. In situations where a party happens to have duties implied by the existence of a contract, but the conduct constituting breach relates to something other than a task required by an express contractual term, the claim only sounds in tort.

This is not an esoteric concept in our jurisprudence that requires historical underpinnings to confirm. In a breach of contract action, any implied duties, such as the duty of good faith and fair dealing, or a standard of professional competence, give context to an express term and help identify what had to be done in order for the express terms to be carried out. **See John B. Conomos, Inc. v. Sun Co., Inc. (R&M)**, 831 A.2d 696, 706 (Pa. Super. 2003) ("Unequivocal contractual terms hold a position superior to **_any_** implied by courts, leaving implied covenants to serve as gap filler.") (Emphasis added). Implied duties (or covenants) are for that reason considered to be

part of a contract, but they may only be referred to in a contract claim as a way "to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract." *Conomos*, 831 A.2d at 707. The breach must still relate to a specific thing that the defendant agreed to do. *See id*.

Pennsylvania courts have recognized the "duty of good faith" or the "doctrine of necessary implication," which are similar limited exceptions to the traditional requirement in contract law that a party may only be sued in assumpsit based on her performance of an express term contained within a contract. *See Stamerro v. Stamerro*, 889 A.2d 1251, 1258-59 (Pa. Super. 2005); *Palmieri v. Partridge*, 853 A.2d 1076, 1079 (Pa. Super. 2004) (the common law "doctrine of necessary implication . . . will imply an agreement by the parties to a contract to do and perform those things" which would be necessary to carry out the purpose of the contract."); *see also Glassmere Fuel Service, Inc. v. Clear*, 900 A.2d 398, 403 (Pa. Super. 2006) (declining to interpret contract as containing an implied or necessary obligation for defendant to provide specific financing services, where "such an obligation [did] not appear on the face of the Agreement itself . . . [or] contain any provisions which suggest that financing was even contemplated by either party."); *Jamison v. Concepts Plus, Inc.*, 552 A.2d 265 (Pa. Super. 1988) (holding that a buyer of property would not be entitled to recover a deposit

from a seller under a contractual contingency if the buyer had breached an implied duty to use diligence to obtain development permits).

For the purposes of a breach of contract action, an implied duty is a "gap filler" that enables courts to determine whether an express contractual term would necessitate additional, implied obligations which would sustain the pleading requirements of the claim. *See Conomos*, 831 A.2d at 706. The implied duty alone, then, would not provide an independent cause of action in tort. *See id*.; *see also Creeger Brick and Bldg. Supply Inc. v. Mid-State Bank and Trust Co.*, 560 A.2d 151, 152 (Pa. Super. 1989) (breach of contract action was properly dismissed as legally insufficient because plaintiff only asserted breach of implied duty for a bank to deal with a borrower in good faith, and no breach of an express contractual terms was alleged).

The limited recognition of contractual terms or duties by implication aligns not only with old cases like *Wingate* and *Zell*, but also with the much more recent holding of *Bruno*, which requires a breach of contract action to ultimately be derived from an express contractual term requiring performance of a specific task. Swatt herself understood this, as she argues in her brief that her contract claims were sufficient because she had "continually

maintained that the Defendants breached [their] contract-specific promises." Appellant's Brief, at p. 64.[5]

In addition to misconstruing the above authorities, the Majority needlessly abrogates many of our prior decisions, and disapproves of related federal caselaw, which supposedly imposed on litigants an "election" or "binary choice" between pursuing a claim in tort or through a breach of contract claim. Again, however, the cases overruled by the Majority did not actually apply the gist of the action doctrine to "convert" viable tort claims or otherwise "extinguish contractual rights" that may be vindicated in a breach of contract action.

For present purposes, the pertinent issue in those cases only had to do with whether the elements of a breach of contract claim were adequately pleaded. *See, e.g.*, *Outerlimits Techs., LLC v. O'Connor*, No. 169 EDA 2023 (Pa. Super. filed December 8, 2023) (unpublished memorandum); *Corliss v. Lee A. Ciccarelli, PC*, No. 891 EDA 2021 (Pa. Super. filed January 4, 2022) (unpublished memorandum); and *Johnstone v. Raffaele*, No. 2581 EDA 2019 (Pa. Super. filed October 30, 2020) (unpublished memorandum); *see also New York Cent. Mut. Ins. Co. v. Edelstein*, 637 F. App'x 70 (3d Cir. 2016) (non-precedential federal decision) ("In sum, a claim sounds in

---

[5] Even if the Majority correctly had construed our Supreme Court's pre-*Bruno* opinions concerning implied duties in assumpsit, we would nevertheless be bound, post-*Bruno*, to follow the Court's most recent pronouncement on the issue.

negligence unless it is alleged that the party breached one of the 'specific executory promises which comprise the contract.'") (Quoting **Bruno**, 106 A.3d at 70).

As Judge Kunselman correctly explained just five years ago in one of those cases, **Johnstone**, "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." **Johnstone**, No. 2581 EDA 2019, at *8-9 (quoting **Bruno**, 106 A.3d at 69).

The gist of the action doctrine was relevant in **Johnstone** and similar cases because it was used to help the courts determine whether the plaintiff was alleging the breach of a duty arising from the express terms of a contract, or solely from a broader duty arising under a tort theory of public policy. **See id**. ("[T]he focus is on the nature of the duties that were allegedly breached."). The above line of cases is completely in accord with our Supreme Court's mandate in **Bruno** that a breach of contract action must be predicated on the defendant's failure to perform a "specific" and "express" term of an agreement:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract. **If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts**

- 13 -

**and, hence, exists regardless of the contract, then it must be regarded as a tort**.

\* \* \* \*

Consequently, **a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since <u>it is not founded on the breach of any of the specific executory promises which comprise the contract</u>**. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

***Bruno***, 106 A.3d at 68-70.

In the present case, then, our disposition as to Ann Marie Swatt's breach of contract claims turns on whether she sufficiently established the Nursing Home's breach of a specific and express contractual duty. ***See id***. I agree with the Majority that the trial court erroneously dismissed Swatt's breach of contract claims on the ground that they only sound in tort. Unlike the Majority, however, I reach this conclusion by strictly evaluating the allegations pleaded in the operative complaint, as well as the evidence presented, and not by merely recognizing that the Nursing Home was alleged to have breached implied duties arising from the privity of the parties.

Swatt asserted the breach of express contractual terms, including the requirement to provide the decedent with "room, meals, housekeeping services . . . and such other personal services as may be required for [the decedent's] health, safety, welfare, good grooming and well-being[.]" Ann Marie's Opposition to Nursing Home's Motion for Summary Judgment, Ex. A ("Contract"). Next, Swatt outlined both the specific ways in which those

- 14 -

express terms were violated, *see id*., as well as the evidence establishing those breaches. *See* Plaintiff's Memorandum of Law in Support of Opposition to Defendants' Motion for Summary Judgment, 9/8/2020, at 10-13. Under *Bruno*, this was enough to establish the existence of a contractual duty, as well as a breach of such a duty. We may therefore dispose of this issue without resorting either to the gist of the action doctrine or inquiring into whether the Nursing Home breached any implied contractual obligations.[6]

Thus, I concur in the result reached by the Majority to extent that the contract claims now before us are premised upon the breach of express contractual undertakings that survive the Nursing Home's motion for summary judgment. To the extent that the Majority would find that implied contractual obligations are themselves sufficient for a breach of contract action, I dissent, as this conflicts with controlling precedent, most notably the holding of *Bruno*.

The Majority's adoption of a new pleading standard for breach of contract claims – dispensing with the requirement of a breach of an express contractual duty – erodes the distinction between claims sounding in tort and contract, undercutting almost 200 years of effort on the part of our Supreme

---

[6] I also agree with the Majority that the Nursing Home had an implied obligation to perform its contracted tasks in a skillful and competent manner. Swatt could pursue independent tort claims on the breach of these implied obligations as long as she could timely allege that the Nursing Home failed to perform them up to the required standard, and the basis for the alleged breaches was not founded upon an express term of her contract. Any breach of those implied duties would be implicated in Swatt's breach of contract action only if based on a specific and express contractual undertaking.

- 15 -

Court to maintain them as separate causes of action. We can reach the same outcome in this case by keeping those distinctions intact.[7]

## II. Statute of Limitations / Relation Back Doctrine

Although I agree with the concurring opinion that the relation back doctrine does not save Elizabeth's survival action, I respectfully submit that the opinion's application of the doctrine is inconsistent with our Supreme Court's decision in **Gasbarini**. Applying **Gasbarini**, I conclude that the relation back doctrine does not rescue Elizabeth's survival action from the statute of limitations.

It is well settled that a decedent's estate cannot be a party to litigation unless a personal representative exists. **Gasbarini**, 409 A.2d at 346. The relation back doctrine articulated in **Gasbarini** provides that under limited circumstances, courts will validate lawsuits filed by the personal representative that precede the date of his appointment. **Id.** at 346-47. Specifically, relation back applies when, before the statute of limitations

_____

[7] In **Bruno**, our Supreme Court gave an overview of several of its earliest decisions in which the gist of the action doctrine was used "to distinguish a breach of contract claim from a tort claim[.]" 106 A.3d at 61-67. The oldest of those, **Zell v. Arnold**, 2 Pen. & W. 292 (Pa. 1830) (referred to as "**Zell I**" by the Majority), was decided 195 years ago. The **Bruno** Court approved of **Zell's** holding that "the gist of a property owner's action against a millwright, whom he had contracted to build a clover mill and to level the adjacent streambed, was tortious since, although arising out of performance of the contract, was not for breach of the millwright's contractual duties, but rather for alleged negligence in performing the contracted tasks." **Bruno**, 106 A.3d at 56.

expires, the plaintiff files a civil complaint or writ of summons identifying herself as personal representative **and** petitions for appointment as personal representative of the decedent's estate. *Id.* Failure to perform either of these steps within the statute of limitations renders the action a legal nullity. *Id.*

In *Gasbarini*, the plaintiff filed a complaint or writ of summons within the statute of limitations that identified the plaintiff as the administrator of the decedent's estate. The plaintiff applied for letters of administration **before** the statute expired, but letters were not issued until after the statute expired due to the plaintiff's failure to post a bond. Our Supreme Court held that relation back applied because the plaintiff timely filed a civil action **and** applied for letters within the statutory period. Only because the plaintiff satisfied both factors did the Court decide that her appointment as administrator was "substantially assured" at the time she filed her action. *Id.*, 409 A.2d at 346. The "only" deficiency in the plaintiff's complaint, said the Supreme Court, "was the fact that she had not been named administratrix of decedent's estate." *Id.*

In reaching this determination, *Gasbarini* found that "the instant case is on all fours" with this Court's decision in *McGuire v. Erie Lackawanna Ry. Co.*, 385 A.2d 466, 468 (Pa. Super. 1978). *Gasbarini* found "persuasive" *McGuire's* reasoning that (1) prior to the statute of limitations, the plaintiff/administrator's action was timely because she filed her complaint **and** applied for letters of administration, and (2) "the only thing that held up the

- 17 -

issuance of letters was [the plaintiff's] failure to post a nominal bond of $1,000." *Gasbarini*, 409 A.2d at 346 (citing *McGuire*, 385 A.2d at 468).

> The concurring opinion describes the relation back doctrine as follows:

> Generally, in cases in which the doctrine has been applied, the plaintiff has filed a complaint within the statute of limitations, but before her appointment as personal representative has been finalized. Once the appointment is official, the doctrine applies to validate the acts of the personal representative that occurred prior to her appointment.

Concurring Opinion at 4. Although the concurring opinion correctly recognizes that the action must be filed within the statute of limitations, it fails to acknowledge *Gasbarini's* second requirement that the individual filing the action must petition for appointment as personal representative within the statute. It leaves open the possibility that relation back applies where the plaintiff files the action before the statute expires but fails to petition for appointment as personal representative until after the statute expires. *Gasbarini* does not permit relation back under those circumstances.

Applying the relation back test articulated in *Gasbarini*, I conclude that Elizabeth's survival action fails. Prior to the statute of limitations for survival actions, Hawbaker applied for and obtained letters testamentary. Hawbaker then filed a writ of summons identifying herself as "executrix" (personal representative) of the decedent's estate. A dispute subsequently arose over whether Hawbaker had a conflict of interest in pursuing an action against the nursing home. The court disqualified Hawbaker from suing the nursing home and appointed Elizabeth as *administratrix pro tem* to prosecute this lawsuit

while permitting Hawbaker to remain personal representative for other functions. Following expiration of the statute of limitations, Elizabeth filed a complaint under a different caption number than Hawbaker's action. The complaint identified Elizabeth as plaintiff in her individual capacity instead of *administratrix pro tem* of the decedent's estate.

Elizabeth's survival action satisfied only one of ***Gasbarini's*** two relation back criteria, the condition that an individual apply to become personal representative prior to expiration of the statute of limitations. Here, Hawbaker applied (and received) letters testamentary prior to the statute, and the court substituted Elizabeth as *administratrix pro tem* after the statute. Elizabeth's substitution thus "related back" to Hawbaker's application for letters prior to expiration of the statute. The second relation back condition—filing an action identifying the plaintiff as personal representative of the decedent's estate—was not satisfied, because Elizabeth filed her complaint after the statute of limitations under a different caption number than Hawbaker's action without identifying herself as *administratrix pro tem*.

Accordingly, pursuant to ***Gasbarini***, I concur with President Judge Lazarus's conclusion that the relation back doctrine does not rescue Elizabeth's survival action.